WAGNER MANUFACTURING, INC. *v.* CULBERTSON ET AL.

[No. 19,976. Filed April 27, 1965.]

Barrett, Barrett & McNagny and J. V. Bruggeman, of Fort Wayne, and Albert H. Cole, Jr., and Coleman, Wildman & Cole, of Peru, of counsel, for appellant.

Tiede & Magley and Charles R. Tiede, of Wabash, for appellee, Eugene L. Culbertson.

HUNTER, J.—This is an appeal from an action by appellee Culbertson against appellant Wagner Manufacturing, Inc. wherein appellee claimed damages for being laid-off in alleged violation of his seniority rights. The action was based on an alleged "Breach of Contract", with a separate paragraph in "specific performance". The cause was tried by the court resulting in a judgment for plaintiff-appellee in the amount of Two Thousand Six Hundred and Ninety-Two ($2,-692.00) Dollars. No judgment was entered for or against appellee Blevins in the trial court.

In assigning as error the overruling of his motion for a new trial, appellant asserts that the decision is contrary to law. To determine this question, we must first set forth the pertinent facts which are as follows: Appellee Culbertson began working for appellant Wagner Manufacturing, Inc. in January, 1957. He became a member of the union at this time. On March 9, 1957, the appellant (hereinafter referred to as the "company") and Local Union 1975 of the International Brotherhood of Electrical Workers (hereinafter referred to as the "union"), entered into a collective bargaining agreement. The collective bargaining agreement contained the normal provisions in such contracts, including provisions defining seniority rights and cate-

gories and provisions outlining the grievance procedure to be followed by an employee if a controversy should arise. The pertinent provisions of the contract defining seniority are as follows:

"Section 1. Seniority is defined as an employee's length of continuous service beginning with his date of employment at the plant. New employees must work sixty (60) days before their seniority is recognized.

. . .

Section 3. Seniority shall be by job groups. Job groups shall be those divisions which are established from time-to time by the Company and which presently are as follows:

. . .

(c) Factory Maintenance.

. . .

Section 5. (a) When there is a decrease in the working force in any job group because of insufficient work, employees shall be laid off in their job group in accordance with the job group seniority list so long as the remaining employees are capable of efficiently performing the remaining available work. When there is an increase in the working force, employees shall be called to work in reverse of the order in which they were laid off.

. . .

Section 12. Personnel hired for the night shift are considered as night shift employees. . ."

The collective bargaining agreement also provided that should differences arise between company and union or employee as to the meaning and application of the agreement, an earnest effort should be made to resolve such differences in the following manner:

(a) An employee should first discuss a grievance with his foreman. If there can be no settlement, the employee shall take it up with the

steward who discusses the problem with the foreman.

(b) If (a) step fails, the employee next reduces his grievance to writing on a grievance form which is taken up by the chief steward and the personnel director.

(c) If step (b) fails, the grievance is referred to the next regular grievance meeting of the union and the company.

(d) If step (c) fails, an International Representative may be called in to discuss the grievance with management and the grievance committee.

(e) If step (d) fails, "at the request of either party", the matter is submitted to arbitration in a prescribed manner.

It appears from the evidence that appellee worked in the "Factory Maintenance" group and that he was fourth or fifth on the seniority list in his particular job group. In May of 1957, some four months after appellee began work, one Robert Gorham came to work for the company in the same "group". At this time, the seniority list posted in the personnel office designated the dates of hire plus the words "day" or "night" penciled in behind the names. Robert Gorham began working on the night shift while appellee remained on the day shift. Both appellee and Gorham were laid off in January, 1958, but Gorham was recalled in August of 1958 for night shift work, yet appellee was not called back at this time. Appellee objected, claiming that by his seniority in the job group, he should have been recalled before Gorham. He eventually instituted grievance procedures asserting that the contract clearly established that he was higher in the seniority bracket in the "Factory Maintenance" group, and that he should have been recalled before Gorham. However, the company maintained the position that seniority was determined on a "shift" basis within a job group as a practice,

and since Gorham had seniority on the night shift which shift was recalled first, said Gorham was properly recalled before appellee.

It further appears that appellee went as far as step (c) in the grievance procedure, in that he presented a written grievance to the union representative. The union representative took the matter up with the company at a "grievance meeting". The company adhered to its position that seniority was to be determined on a "shift" basis and the night shift was recalled first, and since Gorham had seniority on the night shift and appellee didn't, Gorham was rightfully recalled before appellee. The union, through its representative, agreed with the company's position that this had been the practice and that seniority was and should be determined on the "shift" basis within each job group and that this was a proper interpretation of the contract. The union representative thus informed appellee that the union agreed with the company as to the interpretation of the contract and his seniority status, and "as far as he (union representative) was concerned, the matter was dropped".

In support of the assigned error that the decision is contrary to law, appellant presents the following argument:

"By that act, (National Labor Relations Act) appellee surrendered to his Union all rights to negotiate with his employer the terms and conditions of his employment and any action taken by it binds him as though he personally so acted in the absence of a breach of trust on the part of his union which is neither alleged nor proven.

When his Union agreed that the rights of employees on layoff and recall would be governed by their seniority on the shift on which they were working rather than by job groups as listed in the contract, such agreement bound appellee."

An examination of the nature of the relationships and the rights and duties which exist between appellee, union and the company is necessary to fairly decide the question presented in this appeal.

§9 (a) of the National Labor Relations Act, being 29 USCA §159 provides that:

> "Representatives designated or selected for the purpose of collective bargaining by the majority of the employees in a unit appropriate for such purposes, shall be the *exclusive representatives of all the employees in such unit* for the purposes of collective bargaining in respect to rates of pay, wages, hours of employment, *or other conditions of employment.*" (our emphasis)

The collective bargaining representative has " . . . not only wide responsibility but authority to meet that responsibility". *Ford Motor Co.* v. *Huffman* (1952), 345 U. S. 330, 339. This is a continuous responsibility not ending with the signing of the contract because

> "It is the essence of the collective bargaining that it is a continuous process. Neither the conditions to which it addresses itself nor the benefits secured by it remain static." *Aeronautical Industrial Dist. Lodge 727* v. *Campbell* (1949), 337 U. S. 521, 525.

In the case at bar, appellee entered into a relationship as a "member" of a union which was his *exclusive bargaining agent* with the company. The union as his agent, agreed with the company to the interpretation of the terms of the collective bargaining agreement to the effect that seniority should be determined on a "shift job group" basis. We believe that this interpretation of the contract by the parties to such contract—the union and the company—bound appellee. Since appellee was so bound, he could not recover on a claim for "breach of contract" or "specific

performance" against the company because the company was simply adhering to the agreement and therefore did not breach the contract. According to the terms of the collective bargaining agreement, it might have been interpreted that seniority was to be determined on a "job group" basis, however, the terms of the contract in and of themselves are not necessarily the sole determinative of the respective rights and duties of the parties concerned. That is to say, the most apparent interpretation of the terms of the contract does not necessarily vest the employee with an absolute, immutable right which may not be changed or be subject to varied interpretation by his agent, the bargaining representative and the employer. In *Union News Co.* v. *Hildreth* CA 6 (1961), 295 F. 2d 658, plaintiff, a member of a union that had entered into a collective bargaining agreement with defendant, instituted a suit for breach of such contract for lost wages and loss of seniority against her employer claiming that she was discharged for a "cause" which was not explicit in the contract. The union had agreed with the company that she should be discharged. The court, in holding that she could not maintain such an action, stated at p. 663 that

> ". . . considering the statutory authority of the union as the bargaining agent . . . it was within the authority of the union as bargaining agent to agree with defendant that there was just cause for plaintiff's discharge".

And, further, at p. 664:

> "Unless such bilateral decisions, made in good faith, and after unhurried consideration between union and an employer, be sustained in court, the bargaining process is a mirage, without the efficacy contemplated by the philosophy of the law which makes its use compulsory."

Also at p. 667:

> "Under the philosophy of collective responsibility an employer who bargains in good faith should be entitled to rely upon the promises and agreements of the union representative with whom he must deal under compulsion of law and contract."

In the instant case, "shift" seniority was not explicitly stated in the contract, rather it seemed to be by "job group". Appellee remained laid off according to his place in shift seniority, rather than by job group, and therefore it seemed to him that the company was prejudicing him in opposition to his supposed seniority status.

It is well settled that seniority rights are not vested rights but are created either by statute or by contract. E. G. *N.L.R.B.* v. *Int'l. Association of Machinists.* (CA 9 1960), 279 F. 2d 761, 765 (cases cited); see also 90 ALR 2d 975, 978. It also seems to be "well settled that such (seniority) rights of the individual employees can be bargained away by the union representing them in collective bargaining." *Oddie* v. *Ross Gear & Tool Company* (CA 6 1962), 305 F. 2d 143, 149 (cases cited). See also 90 ALR 2d 1003, 1005. Therefore, if we suppose that appellee derived a seniority right from the contract entered into by his agent, that right could be "bargained away". However, it seems that in the instant case, that the union and the company were always in total agreement as to the meaning of the contract in regard to the definition of seniority—seniority on a shift basis—and as such his seniority was not even "bargained away".

Applying rules of construction of contracts, it can be concluded that the literal meaning of the words of the contract may not always be controlling. As stated in

*Smith* v. *Mercer* (1948), 118 Ind. App. 575, 583, 79 N. E. 2d 772:

> "Parties do have the right to put an interpretation upon their own contracts which *may even do away with the ordinary and literal meanings of the terms of the contract, which the courts will recognize and uphold in construing such contracts,* so long as such interpretations do not result in a contract which is illegal." (our emphasis) (citing cases)

See also *Oddie* v. *Ross Gear & Tool Company, supra,* at p. 151. The ordinary rules of agency contemplate that an agent may have sufficient authority to bind a principal in modifying a contract. 2 C.J.S., Agency, §104, p. 1252. Certainly, considering the unique type of agency relationship that exists between an employee and his bargaining representative under the provisions of the National Labor Relations Act, the collective bargaining agent may agree to an interpretation of the agreement which does not strictly conform to what might appear to be the meaning of the terms of such contract. In fact, when we examine the guides as set out by the Supreme Court of the United States in relation to the problem at hand, we can only reach such a conclusion, i.e., the joint interpretation is binding on appellee.

In *Ford Motor Co.* v. *Huffman, supra,* the U. S. Supreme Court had before it a review of a declaratory judgment suit which had been instituted by some union members to declare a seniority provision in a collective bargaining agreement invalid. There was a question of the validity of the provision allowing pre-employment seniority for those employees who had been in the military service. In speaking of the rights and duties of the collective bargaining representative while upholding

such pre-employment seniority provision, the Supreme Court stated at pp. 337-339:

"Any authority to negotiate derives its principal strength from a delegation to the negotiators of a discretion to make such concessions and accept such advantages as, in the light of all relevant considerations, they believe will best serve the interests of the parties represented . . . A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion. . .

Seniority rules governing promotions, transfers, layoffs and similar matters may, in the first instance, revolve around length of competent service. Variations acceptable in the discretion of bargaining representatives, however, may well include differences based upon such *matters as the unit within which seniority is to be computed.* . ." (our emphasis)

Later, the Supreme Court considered the propriety of an action by union members to enjoin the union and employer from carrying out a "joint conference committee" decision on seniority rights of employees in *Humphrey* v. *Moore* (1964), 375 U. S. 335, 84 S. Ct. 363. In this case, two companies had merged and the union and the companies had agreed to abide by a "committee's" decision on seniority rights of the employees who were all members of the same union. The "committee" had determined that the seniority lists should be "sandwiched" or combined, thereby causing some layoffs. It was held that the decision of the "committee" was binding on all the parties including the members of the union.(*) Especially appropriate language is found in the concurring opinion at p. 355:

*For cases sustaining the validity of an amendment to a labor contract which "dovetailed" seniority, see the cases cited in 90 ALR 2d 1003, 1017-1018.

"It necessarily follows from Huffman that a settlement of a seniority dispute, deemed by the parties to be an interpretation of their agreement, not requiring an amendment, is plainly within their joint authority . . . If collective bargaining is to remain a flexible process, the power to amend by agreement and the power to interpret by agreement must be coequal."

It necessarily follows from an application of the above controlling principles to the case at bar that the decision of the trial court was clearly erroneous. When the union and the company agreed that the interpretation of the collective bargaining agreement should be that seniority was determined on a "shift basis" within each "job group" rather than only by job group, appellee Culbertson was bound by that interpretation. Being thus bound by such agreement, he could not recover on an action for breach of contract or specific performance against the company. It seems that where seniority rights established by collective bargaining agreement are affected per agreement between company and union, the proper method of attack necessitates allegation and proof "which show(s) or tend(s) to show (an) improper motive or purposeful discrimination" of the union. *Hardcastle* v. *Western Greyhound Lines* (CA 9 1962), 303 F. 2d 182, 186, cert. den. 371 U. S. 920; 90 ALR 2d 1003, 1005. This rule is presuming that a union member has the seniority rights by contract in the first place. If the facts in this case were that appellee's seniority rights were affected after being established by the contract, we find no allegations or proof of improper motive or purposeful discrimination by the union. On the other hand, an examination of the facts indicates that he may have never had the seniority "right" from the collective bargaining agreement that he supposed he had in the beginning. Such alleged right was simply derived from

his own interpretation of the contract without regard to his collective bargaining agent's interpretation.

We must therefore hold that the court committed error when it indulged in its own and appellee's interpretation of the contract without regard to the company's and union's interpretation, and in concluding that damages were owed appellee from the company for breach of contract because there was no breach of contract by the company. Our conclusion is in accord with a recognition of the principle of our national labor relations policy which warrants that the integrity of collective bargaining agreements and practical implementive procedures related thereto must be maintained. We are also cognizant of the fact that the process of collective bargaining is necessarily a flexible process, not ending with the signing of the contract. Consequently, said contract is subject to recurrent interpretation by agreement between the principals to said collective bargaining agreement. Although, in certain cases an individual employee may maintain an action on the contract, *Hardcastle* v. *Western Greyhound Lines, supra;* see also 18 ALR 2d 352, 361, usually there cannot be an action for breach of that contract against the employer when the employer and the bargaining representative of the union agree to the particular interpretation which is adverse to an individual employee's claimed rights thereunder. The company has a duty to bargain with the collective bargaining agent and it should have the corresponding right to rely upon the agreement as interpreted in concordance with the bargaining representative.

This cause is hereby reversed with instructions to render judgment in favor of appellant and against appellee.

Judgment reversed.

Faulconer, C. J., Bierly, P. J., Carson, Martin, Prime and Smith, JJ. Concur.

Mote, J. Not Participating.

NOTE.—Reported in 206 N. E. 2d 378.