FRUEHAUF CORPORATION *v.* REVIEW BOARD EMPLOYMENT
SECURITY DIVISION, ET AL.

[No. 1170A188. Filed May 3, 1971. Rehearing denied June 4, 1971.
Transfer denied September 3, 1971.]

J. Michael O'Hara, J. A. Bruggeman, Barrett, Barrett & McNagny, of Fort Wayne, for appellant.

Theodore L. Sendak, Attorney General, William S. McMaster, Deputy Attorney General, for appellee.

WHITE, J.—Appellee, Robert A. Long (claimant), was discharged from his employment by appellant, Freuhauf Corporation (employer). He first filed a "grievance" pursuant to provisions of the contract between the union and the employer. The grievance was rejected by the employer and the union demanded arbitration. A hearing before an arbiter

resulted in a decision against the claimant, who then filed with the Indiana Employment Security Division his claim for unemployment compensation benefits. The initial determination by a division deputy denied the claim. The claimant appealed to the Appellate Section where a hearing was held before a referee. Neither party was represented by counsel. The referee opened the hearing with a statemnt including: "Let the record show that instruments marked for identification as Division's Exhibits "1" through "7" are admitted now into evidence over the claimant's objection, and over the Employer's objection." Those "instruments" are: the claim (Ex. 2); the employer's response (Ex. 1); the initial determination (Ex. 3); the appeal to the referee (Ex. 4); the employer's response ("statement of Respondent's Contention"—Ex. 5); the purported arbiter's decision (an exhibit attached to the employer's response, Ex. 6(a)-(d)); and, a wage transcript (Ex. 7).

The witnesses having been sworn, the referee first questioned the claimant (appellee here) who testified that he was told he was discharged for refusing the orders of his supervisor, but he thought his trouble was a personality conflict with the former industrial relations man, Robert Thomas. He denied prior complaints about his work, but on cross-examination by Mr. Frank Harmon, the employer's Asssitant Manager of Industrial Relations, admitted having received several warning slips, which he did not consider to be complaints about his work and attempted vaguely to explain as being the result of a lot of free time, "changing clothes or something before I go home, or something like this."

Mr. Thomas Brown, Associate Director of the Urban League, who did not witness the discharge or any incident leading to it, but had attended the arbitration hearing, was also sworn and examined by the referee. His only testimony tending to relate directly to the merits of the discharge was in answer to the referee's question, "Do you have anything further . . .?" Apparently attempting to argue that the dis-

charge and the arbitration issue had nothing to do with the employee's job performance, the witness recounted that when Mr. Thomas told claimant to go to the office, claimant first went to the cigarette machine, pushing Thomas aside when he attempted to block him, "and this is what really upset Mr. Thomas most of all. . . . There was no mentioning of whether Mr. Long's—I asked . . . whether there was any discrepancies in Mr. Long's work, and I was told that Mr. Long was a good worker."

After an "off the record" interval, the referee announced that the hearing was being continued (or recessed) to permit the employer to bring in as a witness, James David Hawthorne, the employee's supervisor.

After a further continuance, the hearing was resumed five months later before a different referee who had "no record at this time of what had transpired at the previous hearing", but it was then agreed that the continuance was "at the request of the employer to present additional evidence." The employer's representative was now Mr. Joe D. McNulty, Industrial Relations Manager, replacing Mr. Harmon, an assistant. The foreman, Mr. Hawthorne, was not present because "there is a lot of sickness among the foremen, and we couldn't spare him . . . today. . . ." His affidavit was offered along with other documents described by Mr. McNulty as "the same identical submission, which was forwarded to the Equal Opportunities Office . . . in Chicago . . . because the charges went before the EOOC and the documents already made a matter of record with the EOOC." There was some colloquy between the referee and the employer's Mr. McNulty concerning the admissibility of such evidence, including attempts on the part of the referee to explain the division's attitude toward hearsay evidence.[1] The discussion ended with the papers

---

1. Indiana Employment Security Bd., Reg. 1003, being Burns Administrative Rule & Regulation (52-1542b)-1, reads:

"In general, hearsay evidence shall not be considered, but the referee shall consider all such hearsay evidence as would be admissible under common law and statutory rules of evidence of courts

being received by the referee with this statement: "Let the record show that the claimant objects to the submission of this testimony as evidence, and it will not be considered in the determination to be written by the referee." Included among those papers thus received is a second unauthenticated photo-process copy of what purports to be the arbitrator's decision. No other evidence was presented and the referee announced that the hearing was adjourned and that the original referee would issue the determination.

The determination, issued one month later, reads:

"Claimant appeared and testified on September 4, 1969, at a referee hearing requested by him in this case; employer was represented at this hearing by its assistant manager. Claimant appeared also at our continued and final hearing in this case which was held by us to take testimony from claimant's former supervisor at employer who, according to evidence presented at our said initial hearing in this case, had observed facts involved in the discharge of claimant from his employment at employer; since employer did not produce said supervisor at our said continued and final hearing in this case and since employer's sole representative at our said hearing had no knowledge of the facts involved in claimant's said discharge, no evidence was presented at our said hearing.

"The issue for us to determine in this case is whether claimant was discharged by employer for misconduct in connection with his work.

"The evidence in this case established that claimant was discharged by employer on February 13, 1969. Since there is no specific evidence in this case as to the reason for claimant's said discharge, we must find hereby that employer has not sustained its burden of proof in this case to establish that claimant was discharged by it for misconduct in connection with his work there. Therefore, we find hereby that claimant was discharged by employer for its convenience and not for misconduct in connection with his work.

"DECISION: Deputy's initial determination is reversed hereby on April 3, 1970. If claimant is eligible otherwise,

in this state and may, in his discretion, consider all hearsay evidence of whatever nature to which timely objection is not made by an 'interested party.'"

he is entitled to benefits under Indiana Employment Security Act."

The employer then appealed to the Review Board and applied for leave to introduce additional evidence. Leave was denied and the appeal was heard on oral argument on the record. The decision of the Review Board (omitting that part of the "Case History—Source of Appeal" which merely summarizes what we have already detailed from the transcript) reads:

"At the Review Board hearing on August 25, 1970, the employer was represented by James Hawthorne, Production Supervisor, and Joe McNulty, Industrial Relations Manager. Claimant was not present.

"The point in dispute before the Review Board is whether claimant was discharged for misconduct in connection with his work within the meaning of § 1501 of the Act.

"STATEMENT OF FACTS: Claimant had been employed as a 'spot Welder' on a production line from April 1952 until February 13, 1969, the date of his discharge for alleged insubordination. The record contains no specific evidence of probative value as to the reason for claimant's discharge, however, there are a considerable number of documents (employer's exhibits) which can be given no weight because of being in the area of hearsay—neither signee of the employer's exhibits was available at the referee hearings for cross-examination.

"FINDINGS AND CONCLUSIONS: The Review Board finds that claimant was discharged on February 13, 1969, for alleged insubordination, misconduct in connection with work.

"It further finds that the employer has failed to submit specific evidence as to the reason for claimant's discharge.

"In a case of discharge for misconduct in connection with work under § 1501 of the Act, it is the employer's burden to show that claimant has shown a wanton or wilful disregard for the employer's best interests, or that claimant deliberately violated an employer rule or that there was a wrongful intent on his part. (120 Ind. App. 604 [1950], 94 N. E. 2d 672).

"The Review Board concludes that the employer has not sustained its burden of proof to establish that claimant's discharge was for misconduct in connection with his work.

"DECISION: The decision of the referee is hereby affirmed this 5th day of October, 1970."

Attorneys representing the employer entered the case for the first time after the decision of the Review Board was handed down. They immediately initiated the "appeal" to this court.

The employer-appellant's "case" in this court is capsulized in the statement of issues in its appeal brief, as follows: "The Appellant assigns as error that this decision is contrary to law and in support thereof urges that there is specific evidence in the record as to the reason for claimant's discharge and that the award of the Arbitrator was final and binding on claimant to the effect that he was discharged for misconduct in connection with his work."

This is the first disclosure in the record of a contention by the employer "that the award of the Arbitrator was final and binding on claimant. . . .", insofar as his claim for unemployment insurance benefits is concerned. We accept as correct statements of the law, the following quotations on which appellant-employer relies in support of that contention:

"An arbitration award is accorded the benefits of the doctrine of res judicata in much the same manner as the judgment of a court." 6 C.J.S. 243, Arbitration and Award § 97. "The submission of the cause of action set up in the complaint to arbitration and the award thereon is a bar to such cause of action, though the award has not been performed. *Walters* v. *Hutchins,* 29 Ind. 136; *Armstrong* v. *Masten,* 11 Johns. 189; *Jessiman* v. *Haverhill, etc., Iron Manufactory,* 1 N. H. 68." *The Terre Haute and Logansport Railroad Company* v. *Harris* (1890), 126 Ind. 7, 9, 25 N. E. 831, 832. "An award, either at common law or under the statutes, is a bar to an action for the same cause. . . ." 3 I.L.E. 34, Arbitration and Award, § 13.

Those statements are adaptations of rules of law relating to the effect of judicial decisions known as the doctrine of *res judicata,* known as estoppel by judgment. *Town of Flora* v. *Indiana Service Corp.* (1944), 222 Ind. 253, 257, 53 N. E. 2d 161, 163. They have no application

here for the reason that the "cause of action" or "claim" administratively adjudicated by the Employment Security Division is not the "claim" or "cause of action" which was submitted to arbitration. Admittedly we know very little about the "grievance" which was arbitrated, but we do know that it was not a claim for benefits under the Indiana Employment Security Act.[2] It was a claim for reinstatement and back pay, apparently under the terms of a collective bargaining contract between the employer and the claimant's union.[3] Therefore, the award made on the grievance claim, even if given the effect of a court decision, is not conclusive of claimant's other claim for unemployment benefits.

There is, nevertheless, another branch of the doctrine of conclusiveness of adjudication, or *res judicata*, which appellant apparently relies on here without expressly recognizing the distinction. As further stated in *Town of Flora* v. *Indiana Service Corp., supra:*

"The other branch of the subject applies where the causes of action are not the same, but where some fact or question has been determined and adjudicated in the former suit, and the same fact or question is again put in issue in a subsequent suit between the same parties. In such cases the former adjudication of the fact or question, if properly presented and relied on, will be held conclusive on the parties in the latter suit, regardless of the identity of the causes of action, or the lack of it, in the two suits. When the second action between the same parties is on a different cause of action, claim, or demand, it is well settled that the judgment in the first suit operates as an estoppel only as to the point

2. Ind. Acts 1947, Ch. 208, as amended, IC 22-4-1-1, *et seq.*, Burns Ind. Stat. Ann. (1964 Repl.) § 52-1525 *et seq.*

3. The grievance states: "On Thursday February 13, 1969, I was unjustly discharged. I want to be reinstated with full seniority, and paid for all lost time." The authority for the grievance procedure and the arbitration is not clear from the record itself but the briefs and oral argument leave no doubt that its source is the collective bargaining agreement. The impression is given that the contract between the employer and the union is the same, in this respect, as in *Wagner Manufacturing, Inc.* v. *Culbertson, et al.* (1965), 137 Ind. App. 160, 206 N.E. 2d 378, yet there is no evidence or stipulation to that effect, nor has it been suggested that we can take judicial cognizance of such facts, if facts they be,

or question actually litigated and determined, and not as to other matters which might have been litigated and determined. In such cases the inquiry must always be as to the point or question actually litigated and determined in the original action. This branch of the subject may appropriately be described as "estoppel by verdict or finding." (222 Ind. at 257)

Perhaps the better and more modern designation for this so-called branch of the doctrine of *res judicata* is "collateral estoppel."[4]

Without meaning to suggest that the decision of the arbitrator is, or is not, an administive decision, we quote from 2 Am. Jur. 2d 312, Administrative Law § 502, the following, which we believe to be a fair statement of principles which may, by analogy, apply in cases similar to the case at bar:

"The term 'res judicata' or 'estoppel by judgment' are frequently used to denote two distinct effects of a prior judgment as between parties and their privies: (1) merger in the judgment of the cause of action upon which the original suit was maintained or absolute bar of a second suit on the same claim or demand which extends to all matters which were or might have been litigated or adjudged in the first action; and (2) preclusion in a subsequent proceeding involving a different cause of action of relitigation of issues or matters determined in the prior action, not foreclosing matters which were not, although they might have been, actually litigated in the prior action. Recent cases soundly confine the term 'res judicata' to the first effect and apply the term 'collateral estoppel' to the second effect. These distinctions and the choice of terminology to express them are recognized in regard to determinations by an administrative agency.

"Like a judgment of a court, an administrative adjudication is res judicata or conclusive between the same parties on the same cause of action not only as to all matters litigated, but as to all matters which could have been litigated in the proceeding with respect to such cause.

"An administrative determination may also operate by way of collateral estoppel (or res judicata in a limited sense) in

4. "Collateral estoppel" is the term we used in *Mayhew* v. *Deister* (Ind. App. 1969), 244 N.E. 2d 448, 454, 16 Ind. Dec. 516, 525.

a subsequent proceeding in regard to the parties to a prior proceeding and as to matters actually and legally determined therein. Where the underlying issue in two proceedings is the same, the adjudication of the issue in the first proceeding is determinative of the same issue in the second. An issue of fact litigated and determined by an administrative decision, and essential to the decision, is conclusive between the parties in a subsequent action, even though a different claim is involved. But where a different claim is involved in the subsequent proceeding, an issue not actually determined by the administrative decision does not operate as collateral estoppel or res judicata, although the parties might have litigated such issue in the administrative proceeding. There can of course be no question of collateral estoppel as to a matter which could not have been adjudicated in the prior proceeding." (Footnotes omitted.)

We are aware of no case in which a court has decided the precise question of whether an arbitrator's award operates as a collateral estoppel in a subsequent administrative or judicial proceedings between the same parties on a different claim.[5] But if we assume that it does, it will nevertheless operate "as an estoppel only as to the point or question actually litigated and determined. . . ."[6] And because appellant has failed to show us that any point or question *actually litigated* before the arbitrator was also a point or question before the referee or the Review Board we cannot say that the board erred in failing to give it any conclusive effect. Nor can we say that the Board was not fully justified in treating its commentaries and recitals as hearsay.[7]

---

5. The cases involving arbitration cited and relied on by appellant either involve a prior award on the same claim *(The T.H. & L.R.R. Co.* v. *Harris, supra* [126 Ind. 7]; *Wagner Mfg. Inc.* v. *Culbertson* [1965], 137 Ind. App. 160, 206 N.E. 2d 378, 5 Ind. Dec. 273) or no question of estoppel at all (*Boys Market* v. *Retail Clerk's Union* [1970] 398 U.S. 235, 26 L. Ed. 2d 199, 90 S. Ct. 1583) but merely the effect in a suit for an anti-strike injunction of a labor-management agreement containing a no-strike and arbitration agreemet.

6. *Town of Flora* v. *Indiana Service Corp., supra,* 252 Ind. at 257.

7. The arbitrator's report contains comments on the evidence which are assumed by appellant to be "findings" which appellant urges should have been accepted by the Review Board as conclusive proof that claimant was discharged for misconduct in connection with his work. The arbiter, however, states that he was "authorized to decide whether

Appellant also contends that even without the arbitration award, the testimony of claimant and the testimony of the witness Thomas D. Brown constitutes evidence sufficient to sustain a finding that claimant was discharged for misconduct in connection with his work. Appellant does not contend that reasonable men would be bound to reach that conclusion on that evidence and concedes the Review Board did not commit reversible error merely because it did not so conclude. See *Thompson* v. *Hygrade Food Products Corp., et al.* (1965), 137 Ind. App. 591, 592, 210 N. E. 2d 388. Appellant's contention is that the board's decision is contrary to law because it is based on the erroneous finding "that the employer has failed to submit specific evidence as to the reason for claimant's discharge". It contends such finding is erroneous in that it implies that the board should consider only evidence submitted by the employer. But the board also found that "[t]he record contains no specific evidence of probative value as to the reason for claimant's discharge. . . ." We see no reason to disagree with the board's refusal to treat the testimony on this point by claimant and by Mr. Brown as "specific evidence of probative value."

No error being found, the decision of the Review Board is Affirmed.

Hoffman, C.J., Sharp, and Staton, JJ., concur.

NOTE.—Reported in 269 N. E. 2d 184.

---

the Company discharged . . . [claimant] for just cause" and his finding was that "[h]is discharge was for just cause." No where in the report is there any indication of concern for whether "claimant's discharge was for misconduct in connection with his work pursuant to § 1501 of the Employment Security Act," the issue before the Review Board.