ILANA DIAMOND ROVNER, Circuit Judge.
In 1996 Barbara Klein filed this suit under 42 U.S.C. § 1983, claiming that the defendants suspended her from work for 30 days and involuntarily transferred her from her position with the Human Resources Department of the Family and Social Services Administration (FSSA) to a position with the Division of Mental Health in retaliation for hpr exercise of her First Amendment right to freedom of speech. The defendants countered by arguing that Klein’s claim was precluded by a prior decision of the Indiana State Employees’ Appeals Commission (SEAC). The district court agreed and granted the defendants’ motion for summary judgment. Klein appeals.
As did the district court, we accord preclusive effect to the SEAC’s factual findings. Federal courts give preclusive effect to the findings of state administrative tribunals in subsequent actions under § 1983. See University of Tennessee v. Elliott, 478 U.S. 788, 799, 106 S.Ct. 3220, 92 L.Ed.2d 635 (1986) (“[W]hen a state agency ‘acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an *573 adequate opportunity to litigate,’ federal courts must give the agency’s factfinding the same preclusive effect to which it would be entitled in the State’s courts.”) (citation omitted); Crot v. Byrne, 957 F.2d 394, 396 (7th Cir.1992). We believe the Indiana state courts would find that an issue of fact litigated and determined in an agency’s decision is preclusive between the parties in a subsequent action, even though a different claim is involved. See Fruehauf Corp. v. Review Bd. of the Indiana Employment Security Div., 148 Ind.App. 627, 269 N.E.2d 184, 189 (1971); see also Flowers v. Carson, 917 F.Supp. 614, 619 (S.D.Ind.1996); Kelly v. Municipal Ct. of Marion Co., 852 F.Supp. 724, 739 (S.D.Ind.1994), aff'd. 97 F.3d 902 (7th Cir.1996).
Accordingly, the following statement of facts summarizes the facts found by the SEAC. Klein was employed as a personnel officer in the Human Resources Section of the FSSA. On or about September 25, 1995, Klein received a telephone call from a caseworker at the Marion County Division of Family and Children (DFC) who alleged some problems in the Child Protective Services (CPS) division and expressed fear of retaliation and dismissal if she disclosed those problems. Klein and fellow officer Fred Schute, who had been hired only recently, met with and interviewed the DFC caseworker, as well as a former colleague of the caseworker who had been dismissed from her employment with DFC. Klein and Schute met several times that week and reviewed many documents that had been copied by the caseworkers from the CPS division.
Klein updated her supervisor Sidney Perry, the Director of Employee/Labor Relations for FSSA, on the investigation’s progress on a daily, almost hourly, basis. By Friday, September 29, 1995, Perry had determined that some expertise in CPS matters was needed to review the records brought in by the two complaining caseworkers. Perry gave Klein the names - of two investigators whom he asked to be assigned to the case and told her to call the Acting Director of Marion County DFC to set up a meeting that day with the two investigators to officially review the records, files, and documents. Upon examining staffing reports, Klein discovered that the two investigators whom Perry had designated to review the documents were themselves supervisors in the very same CPS division of Marion County DFC. Thus, Klein believed there was a conflict of interest in having those investigators review the documents that alleged wrongdoing by CPS supervisors. Klein testified that she was also concerned that Perry himself may have had a conflict of interest because he had previously advised Marion County DFC to dismiss one of the complaining caseworkers.
Klein had a doctor’s appointment scheduled for the afternoon of September 29, 1995, for which she had already been given permission to leave work. Prior to leaving for that appointment, Klein tried to meet with Perry or his supervisor, James Ladd, but learned that both were in meetings. She then asked Schute to help her carry her notes regarding the investigation and the CPS caseworkers’ documents to the Office of the General Counsel of FSSA, Rachel McGeever, for safekeeping. McGeever is the person designated to receive allegations of ethical problems. But McGeever was not in her office, nor was her Deputy General Counsel, Marianne Wilson. Klein then recognized another attorney walking in the hallway and asked him if he had a place where confidential documents could be safeguarded. The attorney, William Bogard, replied that he did and placed the documents in his office while he searched for the key to a locked file cabinet. Klein left for her doctor’s appointment, and Schute returned to his office in Labor/Employee Relations.
Upon returning to his office, Schute saw Perry and, recalling that Klein had been looking for him earlier, told Perry the location of the documents. Schute accompanied Perry back to Bogard’s office, *574 where they retrieved the documents. When Klein telephoned Schute from her doctor’s office later that afternoon and learned that the documents had been brought back to the Labor/Employee Relations office, she instructed Schute to return the documents to the Office of General Counsel. He did so, and this time found McGeever back in her office; he turned over the documents to her and requested that she safeguard them. Later that day, Perry learned that the documents had been delivered to the Office of General Counsel again, and for a second time he retrieved them and took them back to the Employee/Labor Relations office.
The next Monday, October 2,1995, Klein received written notice of a possible disciplinary action charging her with gross misconduct, insubordinate behavior, disobeying an order, failure to follow instructions, and interfering with the completion of an investigation. The notice stated that a pre-deprivation hearing would be held at 2:30 that afternoon. At the hearing, Klein expressed her concerns about ethical violations in the investigation and explained her reasons for removing the documents. After hearing Klein’s explanation, the hearing officer imposed a 30-day suspension without pay. Once Klein had served the suspension, she was transferred to the Division of Mental Health at Perry’s' instigation. Klein filed a grievance challenging her punishment, but this was denied. She appealed the denial to the SEAC.
Following an evidentiary hearing at which Klein was represented by counsel, the SEAC concluded that the disciplinary actions against her were warranted. The SEAC found that Klein did not explain to Schute her concerns about potential ethical dilemmas in allowing employees from the CPS division of the Marion County DFC to review the documents; concerns that someone might destroy or tamper with the documents; or concerns about Perry’s involvement in the decision to dismiss one of the caseworkers who instigated the present complaint.
The FSSA policy on ethics provides in part that “[a]ll staff have a responsibility to report perceived or real ethical violations to a supervisor or directly to- the Ethics Commission.” According to the SEAC, Klein did not report any real or perceived ethical violations to her co-workers, her supervisor, or the Ethics Commission. Rather, Klein removed documents in an ongoing investigation from the offices of the Employee/Labor Relations Division to prevent the employees from DFC from having access to them. Klein then instructed a co-worker to remove the documents a second time. These actions directly violated Perry’s order to allow the two DFC supervisors to review the documents. Klein did not prove the urgency that induced her actions, nor that this was the only method available to alleviate her concerns. Thus, the SEAC concluded that the FSSA had just cause to suspend Klein for her actions.
Klein then filed suit directly in federal court under § 1983, alleging that the defendants retaliated against her for exercising her right to free speech, and requesting damages and injunctive relief. The defendants moved for summary judgment. In granting the defendants’ motion, the court acknowledged its obligation to give preclusive effect to the SEAC’s findings of fact under Elliott. But the court also observed that, because Klein did not raise the First Amendment defense before the SEAC, the agency’s conclusion that Klein did not inform her co-workers of her ethical concerns did not preclude the district court from considering whether she had engaged in protected speech.
The court first concluded that Klein had not engaged in “speech” as contemplated by the First Amendment. According to the SEAC’s findings, Klein had not communicated her concerns in either verbal or written form to any of her co-workers or the members of the Ethics Commission. The court explicitly rejected Klein’s argument that the gesture of handing documents .over to the Ethics Commission for *575 safekeeping expressed Klein’s ethical concerns about the matter. Under Texas v. Johnson, 491 U.S. 397, 404, 109 S.Ct. 2533, 105 L.Ed.2d 342 (1989), the court explained, there was no evidence that Klein intended her conduct to convey a message, nor were there facts suggesting that others who witnessed her conduct inferred such a message. The court then opined that, even assuming that Klein’s removal of the files was protected expression, the state nonetheless could constitutionally regulate this expression because the restrictions were narrowly drawn and furthered a substantial governmental interest under Clark v. Community for Creative Non-Violence, 468 U.S. 288, 294, 104 S.Ct. 3065, 82 L.Ed.2d 221 (1984). Finally the court determined that Klein’s claim that she was retaliated against for “voicing ethical concerns to fellow employees” was es-topped by the SEAC’s finding that she did not inform her co-workers of her concerns.
We are concerned that the district court was not as thorough as it should have been in evaluating Klein’s claim. The court’s entire First Amendment analysis runs little more than one page, cites only two cases, and glosses over the communicative nature of Klein’s actions. Although the court appropriately cited Texas v. Johnson, which outlines the test for determining when conduct rises to the level of “speech” under the First Amendment, the court did not analyze Klein’s circumstances under that test. Instead the court held in conclusory fashion that Klein had not shown any evidence of communicative intent or effect. This unsupported conclusion is insufficient to permit this court to engage in meaningful review. The court must consider all aspects of her actions. Here, she did not merely transfer files from one office to another for safekeeping. She purposefully moved the files out of the Labor/Employee Relations office and into the office of McGeever, the person designated to receive allegations of ethical problems. The choice of that destination may express a concern with ethics just as an employee sending a file to the FBI or U.S. Attorney’s Office may be seen as expressing a concern over criminal activity in her office. Additionally, although not argued by Klein’s counsel before the district court, we note that Klein clearly did engage in protected speech at the time she. stated her case before the hearing officer. It was only after testifying before the ..hearing officer (and Perry) that Klein suffered the adverse employment actions she challenges here. Perhaps the nature of Klein’s speech at the pre-deprivation hearing would be a fruitful avenue of inquiry to explore upon remand and at the least it may assist in interpreting the nature of her conduct.
Moreover, the case that the district court cited to analyze the state’s punishment of employee speech is not on point. The case relied on by the district court, Clark, dealt with time, place and manner restrictions on the use of a public forum, not with protected speech by public employees. Surprisingly, the court here did not cite any of the cases specifically addressing protections for speech by public employees. See, e.g., Pickering v. Bd. of Education, 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968); Connick v. Myers, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); Wright v. Illinois Dep’t of Children & Family Servs., 40 F.3d 1492 (7th Cir.1994). We do not have sufficient facts to determine the outcome of the Pickering test at this time. Accordingly, we remand this case with instructions to the district court to further consider whether Klein engaged in activity that the First Amendment jurisprudence considers speech. Should the court determine that she did engage in speech, then it must consider under the Pickering line of cases whether that speech was protected by the First Amendment. Finally, we observe that both Klein and the district court surely will benefit from having appointed counsel represent Klein on remand.
The judgment of the district court is ' Vacated and this case is Remanded for *576 further proceedings consistent with this opinion.