Youghiogheny & Ohio Coal Company, Appellant, *v.* Oszust et al., Appellees.

[Cite as Youghiogheny & Ohio Coal Co. *v.* Oszust (1986), 23 Ohio St. 3d 39.]

(No. 85-1258—Decided April 2, 1986.)

*Hanlon, Duff & Paleudis Co., L.P.A.,* and *Gerald P. Duff,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Patrick A. Devine,* for appellee administrator, Ohio Bureau of Employment Services.

*Thomas M. Myers,* for appellee Oszust.

CLIFFORD F. BROWN, J. This appeal requires that we determine whether an arbitrator's determination upholding an employee's discharge for "just cause" according to the terms of the applicable collective bargaining agreement precludes the Ohio Bureau of Employment Services from concluding that the employee was not "discharged for just cause in connection with his work" for purposes of R.C. 4141.29(D)(2)(a).

Appellant maintains that the term "just cause" within the contemplation of its collective bargaining agreement is identical in meaning to the term "just cause" for purposes of eligibility for unemployment compensation. If we were to accept appellant's position, when the parties to the collective bargaining agreement submit the issue of "just cause" for discharge to binding arbitration, the arbitrator would for all practical purposes determine not only the validity of the discharge but also eligibility

for unemployment compensation. However, the legislature has not provided that the determination as to eligibility for unemployment compensation may be made on the basis of private arrangements for the settlement of grievances.

This court has stated that "[t]he law favors the amicable adjustment of difficulties, and arbitration has been favored by the courts in this state from early times. It is considered that arbitrators are constituted by the parties chancellors, judges and jurors, having jurisdiction of the law and of the facts. In general the award is final." *Corrigan* v. *Rockefeller* (1902), 67 Ohio St. 354, 367. However, we noted there that the very purpose of arbitration "is to reach * * * a final disposition of *the controversy between them* [the disputants], and to avoid future litigation of the *same matters.*" (Emphasis added.) *Id.* In the case at bar, the issue which was conclusively resolved by the arbitrator differs significantly from the issue presented to the Ohio Bureau of Employment Services and the board of review; thus, the arbitrator's determination, while final as to the validity of the discharge for purposes of the collective bargaining agreement, simply did not, and could not, take into consideration the employee's eligibility for unemployment compensation.

The General Assembly created the Ohio Bureau of Employment Services to decide claims for benefits under R.C. Chapter 4141. Appeals arising from the bureau's determinations are heard by the Unemployment Compensation Board of Review. R.C. 4141.06. The board of review has a statutory duty to hear the evidence, develop a record, and apply the law. On the other hand, an arbitrator's authority is confined to the resolution of issues submitted regarding contractual rights. The arbitrator is bound to interpret and apply the collective bargaining agreement in accordance with instructions from the parties to the agreement. The arbitrator simply has no authority to invoke this state's unemployment compensation laws in reaching a decision, regardless of the similarity of contractual language found within the substantive provisions of the statutes.

A private arbitrator's determination upholding an employee's discharge for "just cause" according to the terms of the applicable collective bargaining agreement does not preclude the Ohio Bureau of Employment Services from concluding that the employee was not "discharged for just cause in connection with his work" within the meaning of R.C. 4141.29(D)(2)(a). Just as the United States Supreme Court has held that an employee's rights under Title VII of the Civil Rights Act of 1964 were not foreclosed by submission of a discrimination claim to arbitration under the applicable collective bargaining agreement, *Alexander* v. *Gardner-Denver Co.* (1974), 415 U.S. 36, we conclude that by filing a claim for unemployment compensation, Oszust was "asserting a statutory right independent of the arbitration process." *Id.* at 54. See, also, *Barrentine* v. *Arkansas-Best Freight System, Inc.* (1981), 450 U.S. 728; *McDonald* v. *Westbranch* (1984), ____ U.S. ____, 80 L. Ed. 2d 302.

In *Salzl* v. *Gibson Greeting Cards* (1980), 61 Ohio St. 2d 35, 39 [15 O.O.3d 49], we stated that Ohio's Unemployment Compensation Act "was intended to provide financial assistance to an individual who had worked, was able and willing to work, but was temporarily without employment through no fault or agreement of his own." On the facts of this case, the referee concluded that because Oszust followed his doctor's advice and returned to work only when so authorized by his doctor, Oszust's discharge was not through his own fault or agreement, and thus was not based on acts which constitute "just cause in connection with work" within the meaning of R.C. 4141.29(D)(2)(a). The referee found that "at no time was * * * [Oszust] ever advised by * * * [appellant] that he should return to work effective August 18, 1982, or be subject to termination under the provisions of the contract with the United Mine Workers of America. In effect, * * * [Oszust] has been told by his former employer that since he was told sometime after September 1, 1982, that he was able to work effective August 18, 1982, his not returning to work on August 18, 1982, constitutes an absence without a proven illness." That result may indeed be correct by the terms of the applicable collective bargaining agreement, but the arbitrator's determination did not foreclose the possibility that Oszust may nonetheless be eligible for unemployment compensation benefits.[1]

Appellant, by its reliance on *Ivy* v. *Dudley* (1966), 6 Ohio St. 2d 261 [35 O.O.2d 423]; *Dowler* v. *Bd. of Review* (1967), 9 Ohio St. 2d 42 [38 O.O.2d 101]; *Marcum* v. *Ohio Match Co.* (1965), 4 Ohio App. 2d 95 [33 O.O.2d 148], and similar cases, entirely misses the point. In each of those cases, it was the statutorily designated tribunal that made the determination for or against the employee as to eligibility for unemployment compensation, not an arbitrator merely agreed-to by the parties to the applicable contract.

Accordingly, we hereby affirm the judgment of the court of appeals, and remand the cause to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and WRIGHT, JJ., concur.

WRIGHT, J., concurring. I agree that an arbitrator's decision that an employee was discharged for just cause within the meaning of a collective bargaining agreement does not preclude the administrator from determining whether a claimant was terminated for just cause within the meaning

---

[1] Of course, we express no opinion as to the merits of the referee's findings; that issue is left for the court of common pleas on remand.

of R.C. 4141.29. Our conclusion that employees, in the position of appellee, are not limited to contractual remedies under the collective bargaining agreement has been reached in many other jurisdictions.[2]

Although courts should certainly defer to an arbitration decision when the employee's claim is based on rights arising out of the collective bargaining agreement, different considerations apply when the employee's claim is based on rights arising out of a statute.

These considerations were the basis for the United States Supreme Court's decision in *Alexander* v. *Gardner-Denver Co.* (1974), 415 U.S. 36. In that case the court held that an arbitrator's decision pursuant to provisions in a collective bargaining contract was not binding on an individual seeking to pursue his Title VII remedies in court. The court reasoned that the contractual rights under a collective bargaining agreement and the statutory right provided by Congress under Title VII "have legally independent origins and are equally available to the aggrieved employee." *Id.* at 52.

In concluding that arbitration did not provide an adequate substitute for judicial proceedings in adjudicating claims under federal statutes, the court in *Alexander,* stated:

"As the proctor of the bargain, the arbitrator's task is to effectuate the intent of the parties. His source of authority is the collective bargaining agreement, and he must interpret and apply that agreement in accordance with the 'industrial common law of the shop' in the various needs and desires of the parties. The arbitrator, however, has no general authority to invoke public laws that conflict with the bargain between the parties:

" '[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. * * *' *United Steel Workers of America* v. *Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597 (1960).

" '* * * Thus the arbitrator has authority to resolve only questions of

---

[2] See *Delaware Auth. for Regional Transit* v. *Buehlman* (Del. Super. 1979), 409 A. 2d 1045; *Foremost-McKesson, Inc.* v. *Doyal* (La. App. 1977), 353 So. 2d 360; *Schock* v. *Bd. of Review* (1965), 89 N.J. Super. 118, 214 A. 2d 40, affirmed (1966), 48 N.J. 121, 223 A. 2d 633; *Matter of Guimarales* (1985), 109 App. Div. 2d 1042, 487 N.Y. Supp. 2d 162; *Warner Co.* v. *Unemp. Comp. Bd. of Review* (1959), 396 Pa., 545, 153 A. 2d 906; *Perryman* v. *Bible* (Tenn. App. 1983), 653 S.W. 2d 424; *Willard* v. *Emp. Security Dept.* (1974), 10 Wash. App. 437, 517 P. 2d 973; *Kisamore* v. *Rutledge* (W. Va. 1981), 276 S.E. 2d 821; *Streeter* v. *Indus. Comm.* (1955), 269 Wis. 412, 69 N.W. 2d 583. See, also, *Midgett* v. *Sackett-Chicago, Inc.* (1984), 105 Ill. 2d 143, 473 N.E. 2d 1280; *Metro. Distrib.* v. *Ill. Dept. of Labor* (1983), 114 Ill. App. 3d 1090, 449 N.E. 2d 1000; *Whirlpool Corp.* v. *Review Bd. of Ind. Emp. Security Div.* (Ind. App. 1982), 438 N.E. 2d 775; *Fruehauf Corp.* v. *Review Bd. of Ind. Emp. Security Div.* (1971), 148 Ind. App. 627, 269 N.E. 2d 184; *Central Foam Corp.* v. *Barrett* (Iowa 1978), 266 N.W. 2d 33; *Waters* v. *State, ex rel. Maryland Unemp. Ins. Fund* (1959), 220 Md. 337, 152 A. 2d 811.

contractual rights, and this authority remains regardless of whether certain contractual rights are similar to, or duplicative of, the substantive rights secured by Title VII." *Alexander, supra,* at 53-54.

The Supreme Court again rejected the contention that an award in an arbitration proceeding brought pursuant to a collective bargaining agreement precludes a subsequent suit in federal court in *Barrentine* v. *Arkansas-Best'Freight System* (1981), 450 U.S. 728. In that case the court held that an employee could bring an action in the federal district court, alleging violation of the Fair Labor Standards Act, even though he had already unsuccessfully pursued the same dispute through the collective bargaining procedure. In its conclusion, the court cited *Alexander, supra,* at 49-50, which stated:

"In submitting his grievance to arbitration, an employee seeks to vindicate his contractual right under a collective bargaining agreement. By contrast, in filing a lawsuit under * * * [the statute], an employee asserts independent statutory rights accorded by Congress. The distinctly separate nature of these contractual and statutory rights is not vitiated merely because both were violated as a result of the same factual occurrence. And certainly no inconsistency results from permitting both rights to be enforced in the respectively appropriate forums."

By instituting an action under the unemployment compensation laws, appellee was not seeking a review of the arbitrator's decision. Rather he was asserting a statutory right independent of the arbitration process. The arbitrator's task is to effectuate the intent of the parties rather than the requirements of the statute. When the collective bargaining agreement conflicts with the statute, the arbitrator must follow the agreement. When an arbitrator's determination gives full consideration to an employee's statutory rights, a court may properly accord it great weight. Nevertheless, an arbitrator's power is both derived from, and limited by, the collective bargaining agreement. The arbitrator's competence pertains primarily to an interpretation of the collective bargaining agreement and not the ultimate legal issue of whether an employee's statutory rights have been violated.

Arbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights under the unemployment compensation laws, R.C. Chapter 4141. As the court noted in *Alexander,* at 57-58, the fact-finding process in arbitration is usually not equivalent to judicial fact finding. The record of the arbitration proceedings is not as complete; rules of evidence do not usually apply; and the rights and procedures common to civil trials, such as discovery, compulsory process, cross-examination and testimony under oath, are often severely limited or unavailable. The court also recognized that the employee's statutory rights might not be adequately protected by the union, which, without breaching its duty of fair representation, might decide not to support the claim vigorously in ar-

bitration. On the other hand, the resolution of statutory questions is primarily the responsibility of courts.

Not only are arbitral procedures less protective of individual statutory rights than are judicial procedures, but arbitrators very often are powerless to grant the aggrieved employees as broad a range of relief. An arbitrator can award only that compensation authorized by the wage provision of the collective bargaining agreement. He "is confined to interpretation and application of the collective bargaining agreement" and his "award is legitimate only so long as it draws its essence from the collective bargaining agreement." *United Steel Workers, supra,* at 597.

Accordingly, I respectfully concur.