ADAMS, APPELLANT, *v.* HARDING MACHINE COMPANY, INC. ET AL., APPELLEES.

(No. 8-86-20—Decided
January 23, 1989.)

*Livingston & Sell* and *James R. Livingston,* for appellant.

*Miller, Canfield, Paddock & Stone* and *Richard J. Seryak; Porter, Wright, Morris & Arthur* and *Bradd N. Siegel,* for appellees.

SHAW, J. This case arises from a complaint filed in the Common Pleas Court of Logan County by John Q. Adams, a former employee of defendant Harding Machine Company, alleging wrongful discharge from his employment. Upon completion of discovery, motions for summary judgment were filed by both plaintiff and defendant. In a single judgment entry, the trial court denied plaintiff's motion and granted summary judgment in favor of defendant, Harding Machine Company.

There is little dispute concerning the facts which led to plaintiff's discharge from his employment. The record shows plaintiff was an hourly employee of defendant company, working as a machine set-up person. On the date in question, plaintiff punched in approximately fifteen minutes prior to the start of his shift but then left the work premises to pick up a co-worker who had car trouble, returning to work approximately fifteen minutes after commencement of the shift.

In direct contravention of company rules and policy, plaintiff failed to punch out when he left the premises; nor did he record his return to work fifteen minutes late. As a result, plaintiff's timecard for that date indicated he had worked a full shift when in fact he had not. When confronted by company personnel a day or two later, plaintiff readily admitted the incident and his failure to correct the timecard, which he described as inadvertent. Nevertheless, plaintiff was immediately fired for company rule infractions including "falsification" of his timecard, and leaving work premises without permission.

Subsequent to being fired, plaintiff applied for unemployment compensation benefits pursuant to R.C. 4141.29, and benefits were originally denied by the administrator. However, on appeal to the Board of Review, the referee ruled that the discipline of the company was excessive under the circumstances and that plaintiff therefore had been discharged "without just cause" within the meaning of R.C. 4141.29. Accordingly, the decision of the administrator was reversed, benefits were allowed and plaintiff was subsequently re-employed elsewhere. Harding Machine Company did not appeal the decision of the Board of Review.

Other than the usual language from Civ. R. 56, the trial court did not address any of the specific issues or arguments raised by the parties in con-

nection with the decision on the summary judgment motions. In his two assignments of error, plaintiff-appellant now claims simply that the trial court erred in rejecting the arguments set forth in his motion for summary judgment while apparently adopting the arguments of defendant.

Specifically, plaintiff-appellant maintains: (1) that the language in the employee handbook of Harding Machine Company created an implied contract under which plaintiff could only be fired for just cause; (2) that his discharge was in violation of the handbook provisions and was therefore without just cause; and (3) that in any event, the finding of the Board of Review that he was fired "without just cause" is binding upon the common pleas court in the instant civil suit as a matter of law by virtue of the doctrine of collateral estoppel, or at the very least, the finding of the board creates a genuine issue of fact which must preclude any summary judgment in favor of Harding Machine Company.

Harding Machine Company, on the other hand, maintains that: (1) notwithstanding the employee handbook, plaintiff was an employee at will and thus dischargeable for any reason; (2) even if the parties were bound by the handbook, plaintiff was discharged for cause within the express terms of the handbook; and (3) in any event, the doctrine of collateral estoppel is not available to plaintiff because the issues before the Board of Review were not identical to the issues in the instant suit.

1

If plaintiff was truly an employee at will, the remaining issues are moot inasmuch as they affect only the question of "just cause." We will therefore first consider plaintiff's claim, contested by defendant, that the parties were operating not at will, but under the terms of an implied contract created by the employee handbook, properly made part of the record here and entitled "Personnel Policies" of United Technologies Harding Machine.

The specific portion of the handbook relied upon by plaintiff is entitled "Seniority" and provides in pertinent part as follows:

"*Seniority* means the length of continuous service with the Company from the date of hire or rehire and *provides definite rights of employees for employment* and promotion or demotion.

"*Seniority rights of individuals are established* when they have been actively employed for three months (90 calendar days). After this three month probationary period, seniority will become retroactive from the date of hire or rehire.

"*Seniority rights will be lost* if an individual:

"a.  resigns,

"b.  is discharged for cause,

"c.  fails to report to work within three working days following notification to return from a layoff,

"d.  rejects or refuses recall to employment for any reason,

"e.  fails to report following a leave of absence,

"f.  or is on layoff for more than six months. At this time, recall rights are also lost." (Emphasis added.)

There is no disclaimer or other language in the handbook (or in the record herein) which could be construed as modifying the seniority provision set forth above. At the time of the incident for which plaintiff was discharged, he had been with the company several years and was clearly beyond the three-month probationary period. By the express terms of the handbook, seniority provided "* * * definite rights of employees for employment * * *" which could only be

lost for one or more of the six (a through f) enumerated factors set forth in the handbook. The only factor pertaining to discharge, (b), specifies discharge "for cause."

In *Mers* v. *Dispatch Printing Co.* (1985), 19 Ohio St. 3d 100, 19 OBR 261, 483 N.E. 2d 150, the Supreme Court of Ohio held that "* * * the facts and circumstances surrounding an oral employment-at-will agreement, including the character of the employment, custom, the course of dealing between the parties, company policy, or any other fact which may illuminate the question, can be considered by the trier of fact in order to determine the agreement's explicit and implicit terms concerning discharge." *Id.* at paragraph two of the syllabus. The Supreme Court further stated in *Mers, supra,* that "* * * [e]mployee handbooks, company policy, and oral representations have been recognized in some situations as comprising components or evidence of the employment contract." *Id.* at 104, 19 OBR at 264, 483 N.E. 2d at 154. See, also, *Biskupich* v. *Westbay Manor Nursing Home* (1986), 33 Ohio App. 3d 220, 221, 515 N.E. 2d 632, 634, for the principle that the terms of an employee manual will be strictly construed against the employer where the employer is responsible for drafting its contents.

There is no evidence in the record to indicate that plaintiff was originally hired as anything other than an employee at will. Nevertheless, it is our conclusion, consistent with the language of *Mers, supra,* that by virtue of the express terms of the company policy handbook, plaintiff subsequently acquired "seniority rights" under which he was no longer an employee at will and henceforth could only be discharged for cause.

## 2

Having determined that the parties herein were governed by the terms of the company policy handbook and not the general principles applicable to an employment at will, we must next consider whether plaintiff was discharged for cause in accordance with company policy. Plaintiff has argued from the outset that under the terms of the handbook, he could not be summarily discharged for the infractions involved here but instead was entitled to "progressive discipline." We disagree.

Examination of the section of the handbook entitled "Rules of Conduct" reveals two separate categories of rule infractions. These are clearly delineated as "Group A" infractions and "Group B" infractions. With regard to "Group A," the handbook states: "Employees will be cautioned verbally by their Supervisor for infraction of Group A rules of conduct and shall receive a written warning on the second offense. Continued violations will result in disciplinary action." The "Group A" rules of conduct include eleven minor infractions ranging from excessive absenteeism to gambling on work premises.

"Group B" violations, on the other hand, are clearly more serious. Twelve infractions are set forth under this category ranging from insubordination and theft to unauthorized possession of firearms or deadly weapons. Specifically listed under "Group B" infractions are, *inter alia,* "2. Falsification of personnel records, timecards, or other Company records" and "4. Walking off the job and leaving the plant without permission of an authorized person." More important, the handbook clearly states that Group B infractions "* * * will be considered as causes for *immediate discharge without prior warning.*" (Emphasis added.)

As indicated earlier, plaintiff has readily acknowledged *prima facie*

violation of rules two and four. Even giving him the benefit of the doubt as to whether leaving the plant before his shift started was "walking off the job" or whether his failure to adjust his timecard upon returning late was deliberate "falsification" under the rule or merely inadvertent, the fact remains that it is undisputed that plaintiff was off the plant premises without permission during working hours and that he punched his timecard at the end of the shift without acknowledging the period of fifteen minutes represented on the card for which he was not actually present at work.

However harsh the result may seem, we are unable to say that the company action was not in conformity with the express rules of the handbook allowing for immediate discharge for any infraction specified in "Group B." Nor do we see any genuine issue of fact as to this point on the state of this record. (It should be noted that plaintiff further acknowledged that he was fully aware of the handbook policies and rules prior to the incident for which he was fired.) Accordingly, we find that plaintiff was discharged for cause (and thereby lost his "seniority rights") for two "Group B" rule infractions pursuant to the express terms of the company handbook.

### 3

Having determined that plaintiff was discharged for cause pursuant to express company policy, we must now reconcile this determination with the finding of the Unemployment Compensation Board of Review that plaintiff was discharged "without just cause" for purposes of his eligibility to receive unemployment benefits. Plaintiff has consistently maintained that this finding of the Board of Review collaterally estops the common pleas court from any contrary finding as a matter of law or, in the alternative, at least creates a genuine issue of fact as to whether plaintiff was fired for cause, thereby precluding summary judgment on behalf of the company. Again, we must disagree.

In *Goodson* v. *McDonough Power Equip., Inc.* (1983), 2 Ohio St. 3d 193, 2 OBR 732, 443 N.E. 2d 978, the Supreme Court of Ohio repeatedly emphasized the principle that the application of the doctrine of collateral estoppel requires an identity of issues:

"Collateral estoppel precludes relitigation only when the identical issue was actually decided in the former case. * * * [Citation omitted.] Thus, a trial court must decide, prior to applying collateral estoppel, and appellate courts must review, whether the identical issue was actually decided in the former case." *Id.* at 203, 2 OBR at 741, 443 N.E. 2d at 987.

"* * * The burden of pleading and proving the identity of issues rests on the party asserting the collateral estoppel." (Citation omitted.) *Id.* at 198, 2 OBR at 737, 443 N.E. 2d at 983.

"* * * Accordingly, an absolute due process prerequisite to the application of collateral estoppel is that the party asserting the preclusion must prove that the identical issue was actually litigated, directly determined, and essential to the judgment in the prior action." (Citations omitted.) *Id.* at 201, 2 OBR at 739, 443 N.E. 2d at 985.

"* * * [E]ven the court in *Parklane* [*Hosiery Co.* v. *Shore* (1979), 439 U.S. 322,] pointed out that a party may not invoke collateral estoppel without showing that precisely the same issue was litigated in the prior action." (Citations omitted.) *Id.* at 197, 2 OBR at 736, 443 N.E. 2d at 983.

Upon examination of the relevant authority it is our conclusion that the issue of "just cause" pursuant to R.C. 4141.29(D)(2)(a) with which the Board of Review was concerned for determi-

nation of benefit eligibility is not identical to the issue of "discharge for cause" pursuant to the employee handbook with which the common pleas court was concerned upon the civil complaint for wrongful discharge filed in the case before us.

The handbook provision pertaining to "discharge for cause" which we have found applicable to this case has been set forth earlier. R.C. 4141.29 governs eligibility and qualifications for unemployment compensation benefits. Section (D)(2)(a) of that statute provides, *inter alia,* that an individual is not eligible to receive such benefits if the administrator finds that he has been "* * * discharged for just cause in connection with his work * * *." R.C. 4141.46 states that "[s]ections 4141.01 to 4141.46, inclusive, of the Revised Code shall be liberally construed."

In keeping with the spirit of liberal construction set forth in R.C. 4141.46, a variety of authorities have consistently recognized a distinction between the mere violation of a company work rule which may warrant discharge of an employee and the further degree of misconduct or fault required on the part of the employee to justify a denial of unemployment benefits. See 76 American Jurisprudence 2d (1975) 947, Unemployment Compensation, Section 53; 54 Ohio Jurisprudence 2d (1962) 329-330, Unemployment Compensation, Section 41; Annotation, Discharge for Absenteeism or Tardiness as Affecting Right to Unemployment Compensation (1974), 58 A.L.R. 3d 674.

Ohio courts have generally held that the violation of a work rule which may well justify the discharge of an employee under the employment contract does not necessarily amount to misconduct sufficient to deny unemployment compensation benefits under the statute. See *Kiikka* v. *Ohio Bur. of Emp. Services* (1985), 21 Ohio App. 3d 168, 21 OBR 178, 486 N.E. 2d 1233, which states that " '* * * the critical issue [with respect to unemployment benefits] is not whether an employee has technically violated some company rule, but rather whether the employee, by his actions, demonstrated an unreasonable disregard for his employer's best interests. * * *' " *Id.* at 169, 21 OBR at 180, 486 N.E. 2d at 1234. See, also, *Coey* v. *Burwell Nurseries* (1965), 2 Ohio App. 2d 102, 105, 31 O.O. 2d 163, 164, 206 N.E. 2d 577, 580, holding that notwithstanding the employer's right to discharge, "* * * [t]he question is whether the claimant did something which should also deprive him of the benefits of the unemployment compensation law [R.C. 4141.29 (D)(2)(a)]. We find no 'just cause' within the meaning of that law." See, also, *Knowles* v. *Roberts* (App. 1952), 66 Ohio Law Abs. 345, 117 N.E. 2d 173: "The discharge was justifiable under the contract. But this fact does not prevent the employee from receiving the benefits to which he is entitled under the [unemployment compensation] law and which must be liberally construed. * * *" *Id.* at 347, 117 N.E. 2d at 175.

In accordance with the above authority, we note that the distinction between the "cause" necessary for discharge of the plaintiff under the (implied) employment contract in the case before us and the "just cause" necessary to determine eligibility for unemployment compensation benefits under R.C. 4141.29(D)(2)(a) was expressly acknowledged by the Referee for the Board of Review in the following excerpt from his written decision:

"*Although the employer has the right to discharge claimant,* this Referee must conclude based on the entire testimony that said disciplinary action was excessive and that claimant was discharged without just cause in

connection with work *within the meaning of the above referred to section [4141.29(D)(2)(a)] of the Revised Code* of Ohio. No disqualification for benefit rights should be imposed by reason of this separation from employment." (Emphasis added.)

More specifically to the case before us, a number of Ohio courts have refused to apply the doctrine of collateral estoppel in a civil suit for breach of an employment contract based upon a ruling of the Unemployment Compensation Board of Review. In *Youghiogheny & Ohio Coal Co.* v. *Oszust* (1986), 23 Ohio St. 3d 39, 23 OBR 57, 491 N.E. 2d 298, the Supreme Court of Ohio held that a private arbitrator's determination upholding an employee's discharge for "just cause" according to the terms of the applicable collective bargaining agreement does not preclude the Ohio Bureau of Employment Services from concluding that the employee was not " 'discharged for just cause in connection with his work' within the meaning of R.C. 4141.29 (D)(2)(a)." *Id.* at syllabus.

In *Distelzweig* v. *Hawkes Hosp. of Mt. Carmel* (1986), 34 Ohio App. 3d 277, 518 N.E. 2d 43, plaintiff was discharged from her employment for insubordination because she refused to wear a nursing cap. The Unemployment Compensation Board of Review found she was discharged with just cause within the meaning of the Ohio unemployment compensation law and denied benefits. Based upon the ruling of the Board of Review, the employer sought to invoke the doctrine of collateral estoppel to preclude plaintiff's subsequent suit for breach of her employment contract and obtained a summary judgment in common pleas court. In reversing the common pleas court and holding that collateral estoppel did not apply to plaintiff's contract claim, the Court of Appeals for Franklin County relied upon the same

principles from *Goodson* v. *McDonough Power Equip., Inc., supra,* which we set forth earlier:

"The issue, as expressed in *Goodson,* is whether the doctrine of collateral estoppel applies here to preclude or foreclose the relitigation in a subsequent civil action of identical issues actually and necessarily litigated by the board. * * *

"* * *

"Although the board found that plaintiff's continued refusal to wear a cap as required by the written uniform policy constituted insubordination for purposes of R.C. 4141.29(D)(2)(a), the issues which arise concerning whether defendants had 'just cause' to discharge plaintiff prior to the expiration of plaintiff's employment contract have yet to be fully litigated. While there will be an overlap of factual questions as well as similarities in the presentation of evidence and testimony, the doctrine of collateral estoppel does not apply to a mere overlap of issues.* * *" *Distelzweig, supra,* at 279, 518 N.E. 2d at 45-46.

Finally, in *Dean* v. *Miami Valley Hosp., Inc.* (Feb. 22, 1988), Montgomery App. No. CA 10391, unreported, the Court of Appeals for Montgomery County decided a case closely analogous to the one before us. In that case, plaintiff, an instructor and faculty member of defendant's school of nursing, was fired for the unauthorized employment of a student nurse in plaintiff's home. Upon application for employment benefits, the Board of Review determined that plaintiff's conduct was the product of misjudgment rather than intentional misconduct and thus found, as in the case before us, that plaintiff had been discharged without cause in connection with her work. Also as in our case, the defendant hospital in *Dean, supra,* did not appeal the board's ruling.

In the subsequent civil suit for

wrongful discharge, plaintiff asserted in her motion for summary judgment (as to liability only) that the determination of the Board of Review that she was discharged without just cause collaterally estopped the hospital from asserting that she was discharged for just cause under the employment contract. The trial court agreed and granted the motion for summary judgment.

Relying upon a number of the same authorities which we have set forth above, the court of appeals in *Dean, supra,* reversed the judgment of the common pleas court, rejecting many of the same arguments advanced by plaintiff in the case before us in the process:

"It is true that decisions of administrative agencies can have collateral estoppel effect on subsequent civil actions. * * * [Citations omitted.] We conclude, however, that collateral estoppel does not apply in this case, because the issue decided by the Board is not the same as the issue to be determined at trial. Our reason for this conclusion is that the term 'just cause' as used in R.C. 4141.29, has a different meaning than 'just cause' as that term is used in an employment contract. "* * *

"The language of the Board's decision appears to indicate that the Board would not deny benefits unless some type of intentional misconduct was shown. This construction would be consistent with R.C. 4141.46, which mandates a liberal construction of the unemployment compensation statutes in favor of claimants. * * * [Citations omitted.]

"The issue in the breach of contract case, however, is whether Dean's actions constituted an infraction of the hospital's policies sufficient to constitute 'just cause' for purposes of discharge. The 'just cause' sufficient to justify the discharge of an employee need not be as grave as the 'just cause' required to disqualify a discharged employee from receiving unemployment compensation under R.C. 4141.29. See, *e.g., Youghiogheny & Ohio Coal Co.* v. *Oszust* (1986), 23 Ohio St. 3d 39; *Sellers* v. *Bd. of Review* (1981), 1 Ohio App. 3d 161; *Tatone-Lincoln Mercury* v. *Albert G. Giles* (July 22, 1985), Greene App. No. 81 CA 16, unreported." *Dean, supra,* at 8-10.

The court of appeals in *Dean, supra,* concludes its analysis of the issue with the following language which we also find persuasive to our own determination:

"* * * An acceptance of Dean's argument would mean that the Board [of Review] would be put in the position of interpreting the meaning and intent of an employment contract. An employer could not afford to allow an application for benefits to go uncontested. Under Dean's position, an award of benefits would be *prima facie* evidence of a discharge without just cause, regardless of the language contained in the contract. We do not believe that the legislature intended the Board to be arbiter of the terms of an employment contract. The Board's function is to determine whether benefits should be granted, not whether a contract has been breached." *Id.* at 12.

In contrast to the various authorities set forth above, plaintiff in the case before us relies upon *Pullar* v. *Up-John Health Care Serv., Inc.* (1984), 21 Ohio App. 3d 288, 21 OBR 433, 488 N.E. 2d 486. In that case, the Cuyahoga County Court of Appeals held that a finding by the Referee of the Unemployment Compensation Board of Review that an employee was discharged for just cause in connection with work, within the meaning of R.C. 4141.29(D)(2)(a), based on her refusal to follow orders, collaterally estopped that employee from raising the issue of

her wrongful discharge in a subsequent civil suit based upon age discrimination under R.C. 4107.17. However, we believe *Pullar* is distinguishable from the present case.

*Pullar, supra,* involved two separate statutory definitions of "just cause" and concluded that where the Board of Review, upon a full hearing, found that plaintiff was at fault (for violation of a specific work rule) and had therefore been terminated for just cause under the unemployment compensation statute, that plaintiff was naturally precluded from relitigating the issue of whether she had been discharged without just cause on the basis of age discrimination under R.C. 4107.17. Thus, in our view, the *Pullar* court simply ruled that where the termination of employment was once litigated and found to be due to the fault of the employee for refusal to obey a supervisor, then it follows that there was some legitimate basis for the discharge other than the age discrimination alleged in the subsequent civil action. Accordingly, under these circumstances, plaintiff was estopped from relitigating the reason for the discharge.

In contrast to *Pullar, supra,* the Board of Review in the case before us has determined in essence that, all things considered, plaintiff's conduct was not sufficiently culpable to deny benefits under the statute. Under these circumstances, as we have seen from the authorities set forth earlier, the reasoning utilized in *Pullar* does not apply. In other words, the conclusion of the referee in our case that plaintiff should not be disqualified from receiving unemployment benefits under the statute does not necessarily establish the absence of cause to terminate him under the (implied) employment contract.

On the basis of all of the foregoing, it is our conclusion that the decision of the Board of Review to award unemployment compensation benefits to plaintiff does not collaterally estop defendant Harding Machine Company from defending a subsequent civil suit on the basis that plaintiff was discharged for cause under his employment contract. Nor does the finding of the Board of Review, in our view, create a genuine issue of fact as to the issue of cause which would preclude summary judgment on behalf of the employer.

Rather, on the state of the record in this case, it is our opinion that reasonable minds could not differ that plaintiff was discharged pursuant to the express policy of the employee handbook. Moreover, as we have noted above, it is our opinion that, in any event, the issue of "just cause" determined by the Board of Review was not identical to the issue of "cause" to be determined in the civil suit.

Under these circumstances, the determination of the board pertaining to the statutory issue of "just cause" does not raise an issue of fact as to the "material" (contract) issue of "cause" to be litigated at trial. (On the contrary, far from creating any genuine issue of material fact, the finding of the board in this case confirms the cause for termination under the contract by the express acknowledgment of the referee, set forth earlier, that the employer had the right to discharge the claimant.)

For all of these reasons, we find no error in the judgment of the trial court awarding summary judgment to defendant and denying plaintiff's motion. Plaintiff-appellant's two assignments of error are overruled and the judgment of the common pleas court is affirmed.

*Judgment affirmed.*

COLE and EVANS, JJ., concur.