### In re Claim of GUY, Appellant.

[Cite as *In re Claim of Guy* (2001), 146 Ohio App.3d 20.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 97 JE 67.

Decided Sept. 18, 2001.

*Thomas A. Hampton,* for appellant.

*Gary Repella,* for appellee.

DeGenaro, Judge.

This timely appeals comes for consideration upon the record in the trial court and the parties' briefs. Appellant David A. Guy appeals the decision of the Jefferson County Common Pleas Court reversing the decision of the Unemployment Compensation Board of Review and granting judgment in favor of appellee city of Steubenville. The issues before us are whether the trial court erred by (1) failing to accept the credibility findings of the hearing officer and (2) by determining that Guy's discharge was a disciplinary layoff. For the following reasons, we reverse the judgment of the trial court and remand this case for further proceedings.

Guy was employed by the city as a patrolman in the police department from November 30, 1988 until October 18, 1996. He was discharged from his duties on October 18, 1996, after receiving a letter of dismissal from City Manager Gary DeFour. DeFour claimed that Guy obstructed and interfered with a police investigation focusing on Jody Brokaw.

Prior to his discharge, Guy purchased tires at a discounted price from Brokaw, an employee of Ferguson Tire Service located in Weirton, West Virginia. Brokaw later admitted that he had stolen these tires from his employer and claimed that everyone who had purchased tires was aware that they had been stolen. Guy, however, maintains that he was unaware that the tires had been stolen until notified of this fact by the chief of police.

On February 19, 1996, Guy acknowledged that he had purchased tires from Brokaw but denied any wrongdoing when questioned by the chief of police. The Weirton police had been investigating Brokaw for some time, and Guy was then

asked to participate in a sting operation, in which he would call Brokaw and order tires, with the police monitoring the call. It is at this point that the facts claimed by Guy and the city diverge.

The city claims that Guy contacted Brokaw before the scheduled time to warn him and to tell him to "play dumb." Brokaw was observed going to Ferguson Tire Service after hours to pick up a set of tires for an unknown "Jerry," but later that evening he returned the tires. The city asserts that Guy called Brokaw sometime in the interim, thus explaining Brokaw's behavior. At some point after Brokaw had returned the stolen tires to his employer, Guy made the scheduled tape-recorded call to Brokaw, during which Brokaw explained to Guy that he was unable to sell him any more tires.

Brokaw later went to the Weirton Police Department and stated that he had been stealing tires from his employer. He also claimed that Guy had tipped him off in regard to the sting operation being conducted by the Steubenville police. Brokaw pleaded guilty in West Virginia to embezzlement. In return for his testimony and statements to the police, the Steubenville prosecutor's office agreed to forgo any prosecution of him in regard to any crimes allegedly committed by him relative to the stolen tires.

Guy was discharged on October 18, 1996, with the sole reason for discharge being obstruction and interference with a police investigation. Guy claims that he did not warn Brokaw and that there were other ways Brokaw could have been informed about the investigation. Specifically, Brokaw could have been notified by a fellow employee. Guy timely filed an application for unemployment benefits on October 24, 1996, with his benefit period beginning October 20, 1996. His claim for benefits was denied by the administrator of the Ohio Bureau of Employment Services, who reasoned the claimant was discharged for just cause. On request for reconsideration, the administrator affirmed the initial decision. Guy proceeded to file an appeal with the Unemployment Compensation Board of Review ("board"), at which time a hearing was scheduled.

Before that hearing took place, on January 13, 1997, the Steubenville Civil Service Commission issued its decision to reduce Guy's discharge to a six-month suspension after conducting a post-disciplinary hearing. The transcript of the civil service commission hearing was accepted into evidence by the board hearing officer at a hearing on March 10, 1997. The hearing officer determined that Guy was discharged without just cause, and finding that Guy met all eligibility requirements, reversed the administrator's decision and allowed unemployment benefits.

On May 22, 1997, the board disallowed the city's request for further appeal and affirmed the decision of the hearing officer. The city then appealed to the Jefferson County Common Pleas Court. The trial court reversed the findings of

the board, basing its decision upon the inaccurate findings. First, the trial court found that the board improperly substituted its judgment for that of the hearing officer, despite the fact that the board had affirmed the hearing officer's decision. Second, the trial court concluded that Guy was not entitled to unemployment benefits due to his disciplinary layoff for misconduct in connection with his work.

Guy appeals from this decision, raising two assignments of error. Guy asserts in his first assignment of error:

"The trial court erred when it failed to accept the credibility findings of the hearing officer, which were supported by the record."

■ As a preliminary matter, we note that the trial court has apparently misconstrued the record before it, erroneously stating that the board overruled the ruling of the hearing officer, when, in fact, the board affirmed the decision. Because "appeals are from judgments, not the opinions explaining them," we will disregard the trial court's analysis of what it believed to be the procedural history and limit our discussion solely to the judgment rendered in this case. *Couchot v. Ohio State Lottery Comm.* (1996), 74 Ohio St.3d 417, 423, 659 N.E.2d 1225.

As this is an unemployment case on appeal from a decision made by the board, we must apply the standard of review found in R.C. 4141.28(O)(1):

"If the court finds that the decision was unlawful, unreasonable, or against the manifest weight of the evidence, it shall reverse and vacate such decision or it may modify such decision and enter final judgment in accordance with such modification; otherwise, such court shall affirm such decision."

In *Tzangas, Plakas & Mannos v. Ohio Bur. of Emp. Serv.* (1995), 73 Ohio St.3d 694, 653 N.E.2d 1207, the Ohio Supreme Court held that as the statute does not draw a distinction between the scope of review by a trial court and the appellate court, courts on all appellate levels must apply the same standard of review dictated by statute—an abuse-of-discretion standard.

Citing its holding in *Irvine v. Unemp. Comp. Bd. of Review* (1985), 19 Ohio St.3d 15, 19 OBR 12, 482 N.E.2d 587, the *Tzangas* court found that while appellate courts are not allowed to make factual findings or to determine the credibility of witnesses, they are under the duty to examine the record to assess whether the board's decision is supported by the evidence. This duty is shared by reviewing courts on all levels, including the Supreme Court. Applying this standard of review on all levels does not affect the board's position as factfinder because "the fact that reasonable minds might reach different conclusions is not a basis for reversal of the board's decision." *Tzangas*, 73 Ohio St.3d at 697, 653 N.E.2d at 1210.

■  At the hearing held March 10, 1997, Guy offered evidence by way of live testimony. Conversely, the city relied solely upon the transcript of the civil service commission proceedings. The city failed to call any witnesses at the hearing cross-examining only Guy.

■  The hearing officer's review is limited to considering the actual reason for a claimant's discharge and shall not consider evidence of circumstances that were not relied upon by the employer in making the separation decision. *Boyd v. Am. Freight Sys.* (1988), 51 Ohio App.3d 185, 555 N.E.2d 666. Therefore, it was proper to disregard much of the evidence contained in the civil service commission hearing transcript, as it involved testimony regarding the purchase of stolen tires by Guy. The sole reason the city gave for Guy's discharge was his alleged obstruction and interference with a police investigation, that Guy had informed Brokaw about the investigation, and that their conversation that evening would be monitored. The only testimony the city offered concerning the content of the actual phone call warning Brokaw of the investigation was given by Brokaw himself.

Importantly, the hearing officer states in his decision that he believed that there were significant problems with Brokaw's credibility, whereas Guy's testimony given under oath was found to be both credible and supported by the evidence. Most notably, the decision mentions the fact that Brokaw pleaded guilty to stealing tires in West Virginia but avoided prosecution in Ohio through an agreement contingent upon his testifying against Guy.

The hearing officer also suggested the possibility that someone else could have notified Brokaw of the sting operation. Although he does not cite any one example, the record appears to support this contention. For example, Guy's girlfriend Monica Geanangel testified that she had spoken with Brokaw and had asked him whether he was the detective that would be coming over to the house that night. Also, Brokaw's employer Gene Ferguson testified that he had questioned Brokaw that same day regarding his opening of the building after business hours. Finally, Sergeant Joe McCullough testified regarding the belief of Detective Haggerty, both before and after the taped phone call to Brokaw, that someone from Ferguson Tire had informed him about the investigation.

Because we may not usurp the function of the trier of fact by substituting our judgment for that of the board, we conclude that the hearing officer's ruling was neither unreasonable nor against the manifest weight of the evidence. We therefore find that Guy's first assignment of error is meritorious.

Guy asserts in his second assignment of error:

"The trial court erred when it determined that appellant's discharge, which was later modified to a suspension, was a 'disciplinary layoff,' which prevented appellant from qualifying for unemployment benefits."

■ In light of its apparent confusion, it is difficult to discern whether the trial court based its decision on what it thought to be the finding of the hearing officer or whether it relied upon the ultimate conclusion of the civil service commission that Guy would be placed on disciplinary layoff. Regardless, a claimant's eligibility for unemployment benefits is determined by the administrator's ruling, not by the finding of the civil service commission.

Pursuant to R.C. 124.40(A), the powers conferred upon municipal civil service commissions include the following:

"Such municipal civil service commission shall prescribe, amend, and enforce rules not inconsistent with this chapter for * * * appointments, promotions, removals, transfers, layoffs, suspensions, reductions, and reinstatements * * *."

■ Consequently, a determination by the civil service commission of the employee's status as a civil servant may be relevant but not dispositive of his eligibility for unemployment benefits. Essentially, the civil service commission determines whether the employee should remain employed by a municipality, whereas the board determines whether the decision to terminate an employee was based upon just cause. Thus, the board need only accept the civil service commission determination as evidence and place upon it whatever weight it chooses as the trier of fact.

Moreover, the Ohio Supreme Court found in *Youghiogheny & Ohio Coal Co. v. Oszust* (1986), 23 Ohio St.3d 39, 23 OBR 57, 491 N.E.2d 298, that a private arbitration regarding an employee's discharge for "just cause" according to the terms of applicable collective bargaining agreement does not preclude the administrator or board from concluding that the employee was discharged without just cause within the meaning of R.C. 4141(D)(2)(a) and entitled to unemployment benefits. In *Youghiogheny*, the Ohio Supreme Court noted that the General Assembly created the Ohio Bureau of Employment Services, vesting the board with the duty to hear evidence, develop a record, and apply the law, in order to decide claims for benefits under R.C. Chapter 4141. The court concluded that the duty of the arbitrator to determine the validity of the employee's discharge for purposes of a collective bargaining agreement was found to be separate and distinct from that of the board, notwithstanding the fact that his decision would also be final and binding on the parties.

■ In the instant case, the decision regarding the validity of Guy's suspension based on civil service laws is likewise distinct from the hearing officer's decision regarding Guy's eligibility for unemployment compensation. As previously stat-

ed, the findings of the civil service commission may be relevant, but they are not binding on the hearing officer.

We have already addressed the issue of the hearing officer's role as factfinder. In light of that role, we find that the trial court, in determining that Guy was placed on disciplinary layoff, substituted its judgment for that of the board and erred in making that determination. Guy's second assignment of error is therefore meritorious.

For the foregoing reasons, we reverse the judgment of the trial court and affirm and reinstate the decision of the board, and remand the matter to the trial court for further proceedings consistent with this court's opinion and according to law.

*Judgment reversed*
*and cause remanded.*

VUKOVICH, P.J., and WAITE, J., concur.