DECISION AND JUDGMENT ENTRY
{¶ 1} Rebecca J. Pfeifer appeals a judgment affirming an Unemployment Compensation Review Commission ("Commission") hearing officer's finding that her removal from employment by the Department of Veterans Affairs ("VA") constituted a disciplinary layoff for misconduct in connection with work, that she was not entitled to unemployment benefits during this disciplinary layoff, and that she must repay the Ohio Department of Job and Family Services ("ODJFS") for unemployment benefits she received during this period.
 {¶ 2} Pfeifer contends that the Commission abused its discretion when it *Page 2 
disallowed her request for review of the hearing officer's decision. However, the record shows that the Commission reviewed the entire record before disallowing the request and that no circumstances requiring allowance of the request under the administrative code were implicated. Therefore, the Commission did not abuse its discretion when it disallowed the request for review.
 {¶ 3} Next, Pfeifer contends that the hearing officer erred in finding that her removal by the VA constituted a disciplinary layoff for misconduct in connection with work, as opposed to a discharge, which would require the hearing officer to determine whether the VA had just cause for its action. However, under the terms of a collective bargaining agreement, an arbitrator reinstated her employment with the VA without any change in her work location, status, or seniority level. Thus, the hearing officer's decision to consider Pfeifer's removal a disciplinary layoff, rather than a discharge, was not unlawful, unreasonable, or against the manifest weight of the evidence.
 {¶ 4} Finally, Pfeifer contends that the hearing officer erred by simply adopting the arbitrator's decision to treat her removal as a suspension for misconduct instead of making an independent decision about whether Pfeifer's removal constituted a disciplinary layoff or a discharge. However, the record shows that the hearing officer independently developed a record, heard and weighed the evidence, and applied the law to reach a decision. Therefore, the hearing officer did not improperly rely on the arbitrator's decision. Accordingly, we affirm the trial court's judgment.
 I. Facts {¶ 5} The Veterans Affairs Medical Center in Chillicothe, Ohio ("VA Center") hired Pfeifer as an out-patient pharmacy technician. The VA Center began an investigation of *Page 3 
several employees, including Pfeifer, when it discovered prescription drugs were missing from the pharmacy. Pending the investigation's outcome, Pfeifer was reassigned to another section of the VA Center.
 {¶ 6} The transfer angered Pfeifer, and in the process of collecting her personal belongings from the pharmacy, she removed a collection of approximately 50 "derm prep cards" from their normal location and hid them in another location in the pharmacy. The cards contained information used by the pharmacy technicians to prepare various prescription skin medications. The cards further contained patient names, portions of their social security numbers, and their diagnoses. Pfeifer told another pharmacy technician that she had taken the cards. After receiving this information, the VA placed Pfeifer on paid administrative leave.
 {¶ 7} When initially questioned by investigators about the cards, Pfeifer denied taking them. During a second interview, nearly one month after Pfeifer hid the cards, she revealed their location. Pfeifer's concealment of the cards hindered the pharmacy staff in preparing skin medications and caused the VA concern regarding its liability for HIPPA violations. The VA converted Pfeifer's paid administrative leave to a discharge, effective January 21, 2005, after concluding that Pfeifer violated its policies forbidding the misuse of federal government property and requiring employees to strictly adhere to standards of confidentiality regarding patient information. At the time of Pfeifer's removal, the VA notified Pfeifer of her right to appeal the decision to a Merit Systems Protection Board or file a grievance under the negotiated grievance procedure.
 {¶ 8} Pfeifer elected to file a grievance arguing that the discharge violated the terms of the VA's collective bargaining agreement with her union. She also filed an *Page 4 
application for unemployment benefits. In its initial determination, the ODJFS found that the VA discharged Pfeifer without just cause and that she was entitled to unemployment benefits. The VA appealed. In response to this appeal, Pfeifer sent a letter to the ODJFS explaining that her grievance had not yet been heard by an arbitrator, that her "termination may still be overturned," and that she wanted to continue to receive unemployment compensation while her arbitration case remained active.
 {¶ 9} The ODJFS affirmed the initial determination granting Pfeifer unemployment benefits. The VA appealed again, and the director of the ODJFS transferred jurisdiction to the Commission. The Commission scheduled the matter for a telephonic hearing on September 6, 2005, before one of its hearing officers.
 {¶ 10} Prior to the hearing, an arbitrator issued a decision on Pfeifer's collective bargaining agreement grievance. The arbitrator ordered the VA to reinstate Pfeifer, finding that under the circumstances, a discharge ran contrary to the concept of progressive discipline outlined in the agreement. The arbitrator classified the period between Pfeifer's removal in January 2005 and her reinstatement in August 2005 as a long-term suspension without pay. Under the arbitrator's decision, Pfeifer would retain her status as a GS-6 employee, return to work at the VA Center, and suffer no loss in seniority. If feasible, she would return to her position as a pharmacy technician. If that was not feasible, she would be placed in another position for which she was qualified.
 {¶ 11} At Pfeifer's hearing before the hearing officer, the VA submitted the arbitrator's decision as an exhibit. The VA also introduced the testimony of Terry Taylor, Chief of Pharmacy Services at the VA Center. Taylor testified regarding Pfeifer's concealment of the cards, the discipline she received, and the rationale for that discipline. *Page 5 
Pfeifer also testified at the hearing and admitted to concealing the cards. Taylor and Pfeifer testified regarding Pfeifer's reinstatement. Prior to the hearing, Pfeifer learned that it was not feasible for her to return to her position in the pharmacy, but she would be placed in another position at the VA Center. The hearing officer concluded that Pfeifer's suspension without pay "was properly imposed," classified Pfeifer's removal as a disciplinary layoff for misconduct, and concluded that she was not eligible for unemployment benefits. The hearing officer further ordered Pfeifer to repay the benefits she had already received from the ODJFS.
 {¶ 12} Pfeifer filed a request for review with the Commission, which denied it. Pfeifer then filed an appeal with the Pike County Court of Common Pleas. The court affirmed the Commission's disallowance of the request for review and the hearing officer's decision.
 II. Assignments of Error {¶ 13} Pfeifer assigns the following errors for our review:
 ASSIGNMENT OF ERROR NUMBER ONE [T]he Pike County Common Pleas Court's decision dated April 22, 2008 was against the manifest weight of the evidence by failing to grant Appellant's Request for Review filed with the Commission on September 29, 2005.
 ASSIGNMENT OF ERROR NUMBER TWO The Pike County Common Pleas Court erred in affirming the decision of the State of Ohio Unemployment Compensation Review Commission's finding that the Appellant's suspension should be considered a disciplinary layoff for misconduct in connection with work thereby rendering her ineligible for unemployment benefits during the term of the suspension.
 ASSIGNMENT OF ERROR NUMBER THREE The Pike County Common Pleas Court erred in affirming the determination *Page 6 
by the State of Ohio Unemployment Compensation Review Commission to use the Decision of the Arbitrator dated August 10, 2005 to order that the Appellant was overpaid almost eight (8) months of unemployment benefits and that she repay those benefits to the Ohio Department of Job and Family Services.
 {¶ 14} Pfeifer presents only one argument for her three assignments of error. App. R. 16(A)(7) requires separate arguments for each assignment of error. "While appellate courts may jointly consider two or more assignments of error, the parties do not have the same option in presenting their arguments." Keffer v. Cent. Mut. Ins. Co., Vinton App. No. 06CA652, 2007-Ohio-3984, fn. 2. Thus, we would be within our discretion to simply disregard Pfeifer's assignments of error and summarily affirm the trial court's judgment. App. R. 12(A)(2);Keffer at fn. 2. Nonetheless, in the interest of justice, we will review Pfeifer's arguments.
 III. Request for Review {¶ 15} Although Pfeifer contends that the trial court erred in making certain findings, we are required to focus on the decision of the Commission, rather than that of the common pleas court, when reviewing claims for unemployment compensation benefits on appeal. Barilla v. OhioDept. of Job Family Servs., Lorain App. No. 02CA008012, 2002-Ohio-5425, ¶ 6. Therefore, we focus on the decisions of the Commission and its hearing officer when reviewing Pfeifer's arguments.
 {¶ 16} In her first assignment of error, though couched in terms of a "manifest weight of the evidence" argument, Pfeifer contends that the Commission abused its discretion when it denied her request for review of the hearing officer's decision. An abuse of discretion involves far more than a difference in opinion. "The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made *Page 7 
between competing considerations. In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias."State v. Jenkins (1984), 15 Ohio St.3d 164, 222, 473 N.E.2d 264, certiorari denied (1985), 472 U.S. 1032, quoting Spalding v.Spalding (1959), 355 Mich. 382, 384-385, 94 N.W.2d 810.
 {¶ 17} Under R.C. 4141.281(C)(5), the Commission "shall consider a request for review by an interested party, including the reasons for the request." The Commission has discretion to allow or disallow the request. Id. However, it must examine and consider the entire record before it exercises that discretion. Ohio Adm. Code 4146-25-03. Furthermore, the Commission abuses its discretion if it disallows a timely request for review when: (1) "the appellee at the hearing officer level hearing, now the appellant, shows good cause for having failed to appear at a hearing officer level hearing on the initial appeal"; (2) "a material point is involved on which the record is silent or incomplete or appears to be erroneous"; or (3) "it appears that there may have been a denial of a fair hearing under these rules of procedure." Id. at (B).
 {¶ 18} In this case, Pfeifer made a timely request for review of the hearing officer's determination. In its decision disallowing the request, the Commission states that it made its decision "[u]pon consideration [of the request], and upon a review of the entire record[.]" The record in this case does not implicate any of the situations in which the Commission abuses its discretion under Ohio Adm. Code 4146-25-03(B) by disallowing a timely request. Moreover, under the second assignment of error we affirm the hearing officer's characterization of the personnel action as a disciplinary layoff. Therefore, we *Page 8 
conclude that the Commission did not abuse its discretion in disallowing Pfeifer's request for review as it relates to the merits.
 {¶ 19} We overrule Pfeifer's first assignment of error.
 IV. Disciplinary Layoff for Misconduct {¶ 20} In her second assignment of error, Pfeifer contends that the hearing officer erred in finding that her removal from her position with the VA constituted a disciplinary layoff for misconduct in connection with work. Specifically, Pfeifer challenges the hearing officer's finding that she was subject to a disciplinary layoff, rather than a discharge.
 {¶ 21} "Unlike most administrative appeals where we employ an abuse of discretion standard, * * * our review of an appeal from the decision of the Commission is identical to that of the common pleas court."Baird v. S. Ohio Med. Ctr., Scioto App. No. 04CA2939, 2004-Ohio-5888, ¶ 7. We must affirm the Commission's decision unless we find it to be unlawful, unreasonable, or against the manifest weight of the evidence.Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Servs., 73 Ohio St.3d 694,696, 1995-Ohio-206, 653 N.E.2d 1207.
 {¶ 22} In making this determination, we must give deference to the Commission in its role as finder of fact. We may not reverse its decision simply because reasonable minds might reach different conclusions. Irvine v. State Unemployment Comp. Bd. of Rev. (1985),19 Ohio St.3d 15, 18, 482 N.E.2d 587. On close questions, where the Commission might reasonably decide either way, we have no authority to upset its decision. Id., citing Charles Livingston Sons, Inc. v.Constance (1961), 115 Ohio App. 437, 438, 185 N.E.2d 655. "Instead, our review is limited to determining whether the Commission's decision is unlawful, unreasonable, or totally lacking in competent, credible *Page 9 
evidence to support it." Baird at ¶ 8, citing Irvine at 18.
 {¶ 23} Pfeifer contends the Commission incorrectly characterizes the VA's employment action as a disciplinary layoff. R.C. 4141.29(D)(1)(b) provides that an individual may not obtain unemployment benefits for any week "[t]he individual has been given a disciplinary layoff for misconduct in connection with the individual's work." However, if the VA's employment action was a discharge, R.C. 4141.29(D)(2)(a) makes unemployment benefits available unless the employee was "discharged for just cause in connection with the individual's work." And if Pfeifer's removal constitutes a discharge, we must remand the case for a determination of whether the VA had "just cause" to take such action.Horsley v. Ohio Bur. of Emp. Servs., Scioto App. No. 94CA2212,1994 WL 534885, *2, fn. 4.
 {¶ 24} At the time of Pfeifer's removal, the VA notified Pfeifer of her right to appeal the decision by filing a grievance under the collective bargaining agreement. Pfeifer elected to do so. By letter, Pfeifer notified the ODJFS of her pending grievance and that her "termination may still be overturned." At the hearing before the hearing officer, both Taylor and Pfeifer testified regarding Pfeifer's successful pursuit of her grievance and reinstatement to the VA Center by the arbitrator. The VA submitted the arbitrator's decision as an exhibit. In the decision, the arbitrator ordered that Pfeifer retain her status as a GS-6 employee and suffer no loss of seniority. The arbitrator further ordered that Pfeifer be returned to her position as a pharmacy technician, if feasible.
 {¶ 25} Pfeifer attempts to analogize this case to Horsley v. Ohio Bur.of Emp. Servs., supra, in which we determined that the Commission improperly classified an employee's removal as a disciplinary layoff, as opposed to a discharge. In Horsley, *Page 10 
Sam's Club, a division of Wal-Mart, terminated an employee for showing other employees a picture of a pornographic nature. Id. at *1. After challenging this action through Wal-Mart's "open door" policy, a different Sam's Club rehired the employee at his original wage and reinstated his profit sharing plan. Id. However, the employee lost his seniority and benefits. Id. Because another Sam's Club eventually rehired him, the Commission found that he had not been discharged but was instead on a disciplinary layoff for misconduct. Id. at *2. After we found that the employee in fact had been discharged, we reversed the Commission's decision and remanded the action for a determination as to whether the discharge was for just cause. Id.[2]
 {¶ 26} In reaching this decision, we noted that Sam's Club's own witnesses "stated that [the employee] had been discharged, and it was clearly not contemplated at that time that he would return to his former job." Id. at *2. Furthermore, Sam's Club never reinstated the employee to his former job, but instead rehired him at a different store with the loss of seniority and benefits. Id. "In short, all of the evidence show[ed] that the parties clearly did not deem this separation to be merely a suspension without pay from which [the employee] would return." Id.
 {¶ 27} Pfeifer argues that like the employer in Horsley, at the time of her removal the VA wanted to fire her. Thus, she argues that the VA cannot recharacterize her removal as a disciplinary layoff simply because an arbitrator ultimately ordered the VA to reinstate her. Contrary to Pfeifer's argument, under Horsley the intention of the employer alone is not determinative of the issue of whether an employee was terminated from work *Page 11 
or received a disciplinary layoff. The ultimate nature of the continuing relationship between the parties is critical.
 {¶ 28} Moreover, the two situations are not analogous. Unlike the parties in Horsley, both the VA and Pfeifer contemplated the possibility that Pfeifer would return to work at the VA Center if she successfully pursued a grievance under the collective bargaining agreement. When the VA notified Pfeifer of her removal, the VA also notified Pfeifer of her right to appeal the decision under this system. Pfeifer elected to pursue a grievance and actually informed the ODJFS that her "termination may still be overturned" under this system. And, unlike the employee inHorsley, Pfeifer was reinstated under a collective bargaining agreement, not simply rehired, to the same work location, without any change in her status or seniority. Pfeifer was also to be reinstated to her former position, if feasible.
 {¶ 29} Given that Pfeifer was reinstated through a collective bargaining procedure and that her employment continued at the same location without any change of status or loss of seniority, the hearing officer's finding that Pfeifer was subject to a disciplinary layoff was not unlawful, unreasonable, or against the manifest weight of the evidence. Accordingly, we overrule Pfeifer's second assignment of error.
 V. Arbitrator's Decision {¶ 30} In her third assignment of error, Pfeifer contends that the hearing officer improperly adopted the arbitrator's decision on the collective bargaining agreement grievance instead of making an independent decision as to whether the VA discharged Pfeifer or subjected her to a disciplinary layoff. *Page 12 
 {¶ 31} An arbitrator making a decision regarding the propriety of an employer's disciplinary action under the terms of a collective bargaining agreement "is bound to interpret and apply the collective bargaining agreement in accordance with instructions from the parties to the agreement." Youghiogheny Ohio Coal Co. v. Oszust (1986),23 Ohio St.3d 39, 41, 491 N.E.2d 298. "The arbitrator simply has no authority to invoke this state's unemployment compensation laws in reaching a decision, regardless of the similarity of contractual language found within the substantive provisions of the statutes." Id. Therefore, the Commission is not bound by the arbitrator's decision. Id. In fact, the Commission has a statutory duty to "hear the evidence, develop a record, and apply the law." Id. However, the Commission may accept an arbitrator's decision as evidence, and as trier of fact, place upon it whatever weight it chooses. See In re Claim of Guy (2001),146 Ohio App.3d 20, 26, 2001-Ohio-3372, 764 N.E.2d 1082.
 {¶ 32} In this case, the mere fact that the hearing officer reached the same conclusion the arbitrator reached — that Pfeifer had been suspended for misconduct, as opposed to discharged — does not prove that the hearing officer improperly followed the arbitrator's decision. Although the arbitrator's decision was introduced into evidence at the hearing before the hearing officer, a review of the record does not show that the hearing officer felt bound to follow the arbitrator's decision. The record indicates that the hearing officer heard testimony introduced by both parties, developed a record of exhibits, and independently applied the law in reaching the conclusion that "[t]he suspension without pay from January through August of 2005 was properly imposed." Furthermore, we determined that the hearing officer's decision to consider Pfeifer's removal as a disciplinary layoff was not unlawful, unreasonable, or against the manifest weight of the *Page 13 
evidence in assignment of error two. Accordingly, we overrule Pfeifer's third assignment of error.
 {¶ 33} Having overruled each of the assignments of error, we affirm the trial court's judgment.
 JUDGMENT AFFIRMED. *Page 14 
 JUDGMENT ENTRY
It is ordered that the JUDGMENT IS AFFIRMED and that Appellant shall pay the costs.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Pike County Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Abele, J.: Concur in Judgment and Opinion.
[2] We decided Horsley prior to the Supreme Court of Ohio's decision in Tzangas, supra. Prior to Tzangas, confusion existed among appellate courts as to the appropriate standard for our review of appeals from the Commission. Horsley at fn. 3. We adopted an abuse of discretion standard in Horsley; however, we noted that the result in that case would not change regardless of the standard used. Id. *Page 1