OPINION
{¶ 1} Appellant, Brown Memorial Hospital, Inc., appeals the judgment of the Ashtabula County Court of Common Pleas, reversing the decision of the Unemployment Compensation Review Commission and reinstating appellee, Karen R. Groves', unemployment benefits. For the reasons that follow, we affirm the decision of the court below.
 {¶ 2} Groves was employed by Brown Memorial Hosptial as a Staff Nurse in the Emergency Department from July 1, 1997, until June 28, 2007, when she was dicharged for engaging in conduct in violation of the hospital's policies.
 {¶ 3} Groves applied for and obtained unemployment benefits in the amount of $11,206 through the Ohio Department of Job and Family Services.
 {¶ 4} Brown Memorial Hospital appealed the Director's Redetermination affirming the award on the grounds that Groves was "discharged by the employer for just cause in connection with work." The Department of Job and Family Services transferred juridiction over the application to the Unemployment Compensation Review Commission.
 {¶ 5} On December 18, 2008, the Review Commission conducted a telephone hearing.
 {¶ 6} On January 2, 2009, the Review Commission issued its Decision. The Commission made the following findings of fact: "The employer received complaints from patients that claimant was engaging in inappropriate behavior during her shift. This behavior included laying on the counter and dancing with her legs and putting her feet on the ceiling, wearing thong underwear on the outside of her clothing, riding a gurney down the hall, and stuffing her pants to make it look like she had a large scrotum. The employer spoke to numerous other employees who had also observed claimant's *Page 3 
inappropriate behavior. Claimant admits that this behavior occurred, and that it happened in the Emergency Department during her shift."
 {¶ 7} The Review Commission concluded that Groves "was discharged by Brown Memorial Hospital, Inc. for just cause in connection with work" and reversed Director's Redetermination. Groves was ordered to repay the Department of Job and Family Services $5,351, the amount of benefits received through October 13, 2007.
 {¶ 8} Groves duly filed a request for review of the Review Commission's Decision, which was disallowed.
 {¶ 9} On March 19, 2008, Groves filed her Notice of Appeal with the Ashtabula County Court of Common Pleas.
 {¶ 10} On September 18, 2008, the trial court rendered its Judgment Entry, reversing the Review Commission's Decision and reinstating Groves' unemployment benefits. The court found "the decision of the Review Commission was unlawful and unreasonable since the employer, Brown Memorial Hospital failed to follow its own policy of progressive discipline. * * * [T]here is not one date set forth in these proceedings when this conduct is alleged to have occurred during the nine years of her employment. There was not one prior disciplinary action of any nature agaisnt Groves while employed at Brown Memorial Hospital. While her conduct was outlandish and immature, it should have been dealth with by following the employer's progressive disciplinary policy."
 {¶ 11} On October 20, 2008, Brown Memorial Hospital filed its Notice of Appeal with this court. Brown raises the following assignment of error on appeal: "The Trial Court Erred to the Prejudice of the Appellant in Reversing the Determination of the *Page 4 
Review Commission to Deny Appellee's Benefits and in Reinstating Appellee Groves' Unemployment Compensation Benefits."
 {¶ 12} An "eligible individual shall receive benefits as compensation for loss of remuneration due to involuntary total or partial unemployment" as provided for by Ohio's unemployment compensation laws. R.C. 4141.29. However, "no individual may * * * be paid benefits * * * [f]or the duration of the individual's unemployment if the director [of job and family services] finds that * * * [t]he individual quit work without just cause or has been discharged for just cause in connection with the individual's work * * *." R.C. 4141.29(D)(2)(a). "Traditionally, just cause, in the statutory sense, is that which, to an ordinarily intelligent person, is a justifiable reason for doing or not doing a particular act." Irvine v.Unemployment Comp. Bd. of Rev. (1985),19 Ohio St.3d 15, 17 (citation omitted).
 {¶ 13} "An appellate court may reverse the Unemployment Compensation Board of Review's `just cause' determination only if it is unlawful, unreasonable or against the manifest weight of the evidence."Tzangas, Plakas Mannos v. Ohio Bur. of Emp. Servs., 73 Ohio St.3d 694,1995-Ohio-206, at paragraph one of the syllabus; R.C. 4141.282(H). The duty of the appellate court is not to make factual findings or determine the credibility of the witnesses, rather, the court "is to determine whether the decision of the board is supported by the evidence in the record." Irvine, 19 Ohio St.3d at 18 (citations omitted). "This duty is shared by all reviewing courts, from the first level of review in the common pleas court, through the final appeal in this court."Tzangas, 73 Ohio St.3d at 696.
 {¶ 14} There is a line of cases which hold: "A failure to follow a mandatory progressive discipline procedure which results in an employee's discharge is a discharge *Page 5 
without just cause and entitles that employee to receive unemployment benefits." Pickett v. Unemployment Comp. Bd. of Rev. (1989),55 Ohio App.3d 68, at syllabus. This holding has been cited and/or followed by a majority of the appellate districts, including this one. See Stull v.Director Ohio Dept. of Job and Family Servs., 11th Dist. No. 2003-T-0029, 2004-Ohio-1516, at ¶ 16 (citation omitted); Peterson v.Ohio Dept. of Job and Family Servs., 4th Dist. No. 03CA2738,2004-Ohio-2030, at ¶ 20 (citations omitted); Apex Paper Box Co. v. OhioBur. of Emp. Servs., 8th Dist. No. 77423, 2000 Ohio App. LEXIS 2038, at *6 (citation omitted); Gaultieri v. Stouffer Foods Corp., 9th Dist. No. 19113, 1999 Ohio App. LEXIS 1176, at *10 (citation omitted);Eagle-Pitcher Industries, Inc. v. Ohio Bur. of Emp. Servs.
(3rd Dist. 1989), 65 Ohio App.3d 548, 550-551, citing Harp v. Admr. Bur. ofEmp. Comp. (1967), 12 Ohio Misc. 34, 38.
 {¶ 15} In the present case, the trial court determined that Brown Memorial Hospital failed to follow its mandatory progressive discpline procedure when terminating Groves' employment. On appeal, Brown claims that its progressive discipline policy is discretionary rather than mandatory and, thus, it has "the right to discharge employees notwithstanding the progressive discipline policy." Cf. Stull, 2004-Ohio-1516, at ¶ 17.
 {¶ 16} Progressive discipline at Brown Memorial Hospital is described as "Corrective Action" and is defined as follows: Corrective action "[d]escribes levels of conduct which deviates from those expected of University Hospital Health System (UHHS) employees and the prescribed procedures to be followed when levels deviate from expected standards."
 {¶ 17} The Brown Memorial Hospital policy further provides:
 {¶ 18} When formal corrective action is appropriate, the guidelines below will be followed: *Page 6 
 {¶ 19} Confirmation of counseling:
 {¶ 20} Typically the beginning level of corrective action unless the incident is serious (see Attachment A).
 {¶ 21} B. Warning:
 {¶ 22} Generally used as a second step when an incident involves repeat performance issues and a confirmation of counseling has already been given (see Attachment A). * * *
 {¶ 23} C. Suspension or final warning:
 {¶ 24} * * *
 {¶ 25} D. Discharge procedures may occur under the following circumstances * * *:
 {¶ 26} As the final step in the progressive corrective action process (see Attachment B).
 {¶ 27} Repeated violations of lesser offenses.
 {¶ 28} Conduct is serious enough to warrant immediate discharge (seeAttachment B).
 {¶ 29} Attachment A contains a non-exhaustive list of "reasons for progressive corrective action." Examples of such "unacceptable conduct" include: "[a]ny conduct detrimental to patient care, fellow employees or entity operations"; "[b]ehavior or language disruptive or offensive to other employees, patients or visitors"; "[p]ractical joking or horseplay"; "[f]ailure to adhere to departmental or divisional standards of personal hygiene, grooming or uniforms"; "[i]nterfering with the work of other employees"; "[d]iscourteous treatment of patients, visitors, other employees and/or staff"; and "[a]ny other offense deemed by management to be in violation of entity or departmental policy, practices, rules or procedures." *Page 7 
 {¶ 30} Attachment B contains a non-exhaustive list of "reasons for discharge from employment." Examples of conduct "of such a serious nature that [it] could subject the employee to discharge" include: "[i]nappropriate physical contact or fighting or attempting to injure patients, visitors, medical staff of other employees"; "[a]ny type of harassment, language or conduct which creates a hostile work environment"; "[a]ny conduct which is seriously detrimental to patient care, other individuals or entity operations"; "[b]ehavior which is threatening, intimidating, coercing or interfering with patients, visitors, medical staff or other employees"; "[a]ny other serious offense deemed to be in violation of entity or departmental policy, practices, rules or procedures."
 {¶ 31} The terms of Brown Memorial Hospital's corrective action policy demonstrate that the policy is mandatory; it establishes "prescribed procedures to be followed" and guidelines that "will be followed" when corrective action is necessary. However, the policy grants Brown Hospital a certain amount of discretion to determine which conduct is subject to progressive discipline and which conduct is cause for immediate discharge. Brown Memorial may not exercise this discretion arbitrarily. "If an employer wishes to discharge an employee for a breach of company rules and expects to claim the discharge is `for just cause in connection with the employee's work,' such rules must be fairand they must be administered fairly." Eagle-Pitcher,65 Ohio App.3d at 550-551, citing Harp, 12 Ohio Misc. at 38 (emphasis sic). Thus, if Groves' conduct may be fairly characterized as "unacceptable conduct" such as described in Attachment A, she should have been subject to progressive corrective action before being discharged.
 {¶ 32} The Review Commission described Groves' conduct as "inappropriate behavior" that included "laying on the counter and dancing with her legs and putting her *Page 8 
feet on the ceiling, wearing thong underwear on the outside of her clothing, riding a gurney down the hall, and stuffing her pants to make it look like she had a large scrotum." The trial court properly found that Groves' conduct fell "within the nature of the conduct set [forth] in attachment `A'," conduct in the nature of "practical joking or horseplay" which is disruptive, offensive, and/or discourteous.
 {¶ 33} The trial court also noted that the conduct described in Attachment B was decidely more serious and included "criminal conduct, fraud, theft, substance abuse and sleeping while on duty." Attachment B prescribes inappropriate conduct which "creates a hostile work environment," "is seriously detrimental to patient care," and "is threatening, intimidating, coercing or interfering with patients." Significantly, there is no evidence in the record that Groves' conduct affected her job performance, the ability of other employees to perform their assignments, or the care received by patients.
 {¶ 34} Accordingly, the Review Commission's Decision was not supported by the evidence in the record inasmuch as Groves' conduct cannot reasonably be considered "of such serious nature" as to subject her to immediate discharge.
 {¶ 35} The sole assignment of error is without merit.
 {¶ 36} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas, reversing the Review Commission's Decision and reinstating Groves' unemployment benefits is affirmed. Costs to be taxed against appellant.
MARY JANE TRAPP, P.J., TIMOTHY P. CANNON, J., concur. *Page 1